FERRANDO ET AL., APPELLANTS, *v*. AUTO-OWNERS MUTUAL INSURANCE

COMPANY ET AL.; PERSONAL SERVICE INSURANCE COMPANY, APPELLEE.

[Cite as *Ferrando v. Auto-Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 2002-
Ohio-7217.]

*Insurance — Underinsured motorist coverage — When insurer's denial of
uninsured motorist coverage is premised on insured's breach of prompt-
notice provision of insurance policy, insurer is relieved of obligation to
provide coverage only if it is prejudiced by the delay — When insurer's
denial of underinsured motorist coverage is premised on insured's
breach of consent-to-settle or other subrogation provision of insurance
policy, insurer is relieved of obligation to provide coverage only if it is
prejudiced by the failure to protect its subrogation rights.*

(No. 2001-1843 — Submitted October 15, 2002 — Decided December 27, 2002.)

APPEAL from the Court of Appeals for Ashtabula County, No. 2000-A-0038.

_____

## SYLLABUS OF THE COURT

1. When an insurer's denial of underinsured motorist coverage is premised on the
   insured's breach of a prompt-notice provision in a policy of insurance, the
   insurer is relieved of the obligation to provide coverage if it is prejudiced
   by the insured's unreasonable delay in giving notice. An insured's
   unreasonable delay in giving notice is presumed prejudicial to the insurer
   absent evidence to the contrary.

2. When an insurer's denial of underinsured motorist coverage is premised on the
   insured's breach of a consent-to-settle or other subrogation-related
   provision in a policy of insurance, the insurer is relieved of the obligation

to provide coverage if it is prejudiced by the failure to protect its subrogation rights. An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary. (*Bogan v. Progressive Cas. Ins. Co.* [1988], 36 Ohio St.3d 22, 521 N.E.2d 447, paragraph four of the syllabus, overruled in part.)

_____

**ALICE ROBIE RESNICK, J.**

{¶1}  This appeal requires us to consider whether a provider of underinsured or uninsured motorist ("UIM") coverage may be released from its obligation to provide coverage due to the failure of a claimant to notify the insurer of a potential claim prior to settlement with and full release of the tortfeasor who caused the injury giving rise to the potential claim. The motor vehicle insurance policy at issue requires that the insurer be given prompt notice of a UIM claim and requires the consent of the insurer prior to settlement. For the reasons that follow, we determine that the insurer is released from the obligation to provide UIM coverage when the insurer is prejudiced by the lack of reasonable notice or by the insured's failure to obtain consent to settle prior to the insured's settlement with and release of the tortfeasor. We reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings.

I

Facts and Procedural History

{¶2}  The facts of this case are basically undisputed. On February 28, 1994, plaintiff-appellant Isler J. Ferrando, an employee of the city of Ashtabula, was driving a city-owned vehicle in the course of his employment on a public road when he observed a truck lose part of its load onto the roadway. Ferrando stopped his vehicle and got out. While Ferrando was clearing the roadway, the driver of the truck backed up and struck and injured him.

**{¶3}** Ferrando and his wife, plaintiff-appellant Maria Ferrando, sued the tortfeasor and notified their own insurance carrier, defendant Auto-Owners Mutual Insurance Company ("Auto-Owners"), of their potential UIM claim. The parties agree that the tortfeasor had liability insurance with a limit of $12,500. On April 1, 1997, Auto-Owners gave permission to the Ferrandos to settle with the tortfeasor for his policy limit of $12,500 and to release him from all claims. They did so on May 20, 1997.

**{¶4}** The Ferrandos then pursued a UIM claim against Auto-Owners under the same case number of the suit they had filed against the tortfeasor, claiming that their damages were in excess of $12,500. During the pursuit of this claim, it came to light that the city of Ashtabula carried UIM coverage on the vehicle Ferrando was driving at the time he was injured. This UIM coverage was part of a motor vehicle insurance policy Ashtabula had with defendant-appellee Personal Service Insurance Company ("Personal Service"). When it was discovered that Personal Service was a provider of UIM coverage under the city's policy, Auto-Owners sought to implead Personal Service as a third-party defendant. The parties agree that that action was dismissed without prejudice by a stipulation of all involved parties on January 13, 1998.

**{¶5}** On January 12, 1999, the Ferrandos filed a complaint for declaratory judgment in the Court of Common Pleas of Ashtabula County, naming Auto-Owners and Personal Service as defendants. The Ferrandos sought a declaration that they were insureds entitled to UIM payments under each policy.

**{¶6}** All parties moved for summary judgment. Personal Service argued that the Ferrandos had failed to comply with several provisions in the UIM policy it had issued to Ashtabula and so should be unable to collect under that policy. Specifically, Personal Service asserted that it was not notified of the accident until approximately three and a half years after its occurrence when Auto-Owners attempted to implead it in the first suit filed by the Ferrandos and that it had no

knowledge of any accident or any possible claim prior to that time. Personal Service argued that this delay in notice violated the policy's requirement of "prompt notice" of any accident, claim, suit, or loss.

{¶7} Furthermore, Personal Service argued that the Ferrandos, by settling with and releasing the tortfeasor from liability without notifying Personal Service and without giving it an opportunity to consent to the settlement, had failed to protect the insurer's subrogation rights, thereby materially breaching the policy requirements that the insured obtain the consent of the insurer before settling any claim and that the insured not impair the subrogation rights of the insurer.

{¶8} In its motion for summary judgment urging the trial court to declare that Personal Service was the primary provider of UIM coverage, Auto-Owners argued that notice of the accident to Personal Service was timely under the circumstances because the Ferrandos notified Personal Service as soon as they discovered that UIM coverage existed under the city's policy. Auto-Owners asserted that such a policy carried by a city normally would not be expected to include UIM coverage on city vehicles, so that the Ferrandos could not be faulted for failing to discover the coverage earlier.

{¶9} In their motion for summary judgment, the Ferrandos agreed with Auto-Owners that notice to Personal Service was reasonably given under the facts of this case and argued that, because Auto-Owners had consented to a settlement with and release of the tortfeasor, Personal Service would also have consented and so was not prejudiced by the notice's timing.

{¶10} The trial court granted summary judgment to the Ferrandos, declaring that they were entitled to UIM coverage under both their policy with Auto-Owners and the city's policy with Personal Service and that the Ferrandos' claims for UIM damages would be paid by the two insurers on a pro rata basis. In deciding that UIM coverage was available under the city's policy with Personal

4

Service, the trial court, citing no cases in support of its ruling on this question, reasoned as follows:

**{¶11}** "Personal Service contends that it is not liable to the Plaintiffs due to their failure to give timely notice of the underinsured claim and failing to obtain its consent before releasing [the tortfeasor]. It is obvious that Auto-Owners released [the tortfeasor] from any further liability due to insufficiency of assets on [the tortfeasor's] part for any further claim by Plaintiffs or Auto-Owners. It is equally obvious to the Court that neither Plaintiffs [n]or Auto-Owners initially knew there was any additional insurance coverage[;] otherwise Personal Service would have been promptly notified. Under the circumstances of this case, the Court finds Personal Service was reasonably notified once it became known that the City of Ashtabula maintained uninsured/underinsured coverage for its employees. Personal Service is not prejudiced by any late notice regarding this claim by the Plaintiffs. [The tortfeasor] had insufficient assets for Auto-Owners to pursue and any action by Personal Service against [the tortfeasor] would result in it coming up substantially empty handed. Personal Service should not be allowed to escape its liability because it didn't waive its right to pursue [a tortfeasor] without significant assets."

**{¶12}** Personal Service appealed the trial court's judgment to the Court of Appeals for Ashtabula County. Auto-Owners did not appeal.

**{¶13}** The court of appeals reversed the judgment of the trial court and entered judgment for Personal Service, finding that UIM coverage was not available to the Ferrandos under the city's policy with Personal Service for two separate reasons. First, the court of appeals determined that the Ferrandos materially breached the consent-to-settle provision of that policy when they failed to notify Personal Service and give it an opportunity to consent prior to their settlement with and release of the tortfeasor, thereby destroying Personal Service's subrogation rights. The court of appeals held that compliance with the

consent-to-settle provision was a condition to UIM coverage and that it was irrelevant that the insurer might not have been prejudiced by the settlement and release.

**{¶14}** Second, the court of appeals found that the failure to notify Personal Service of the accident or claim until three and a half years after the accident was unreasonable and that the Ferrandos did not rebut the presumption of prejudice to the insurer that arose from the delay in notice.

**{¶15}** The cause is now before this court pursuant to the allowance of a discretionary appeal.

II

The Policy Provisions

**{¶16}** The insurance policy the city had with Personal Service at the time of this accident provided: "In the event of 'accident', claim, 'suit' or 'loss', you must give us or our authorized representative prompt notice of the 'accident' or 'loss'. Include:

**{¶17}** "(1) How, when and where the 'accident' or 'loss' occurred;

**{¶18}** "(2) The 'insured's' name and address; and

**{¶19}** "(3) To the extent possible, the names and addresses of any injured persons and witnesses."

**{¶20}** In addition, if there was an accident, claim, suit, or loss, the policy required a claimant to "promptly send us copies of the legal papers if a suit is brought."

**{¶21}** The policy also provided, "This insurance does not apply to: (1) Any claim settled without our consent."

**{¶22}** The policy also contained a subrogation clause that stated, "If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to

6

us. That person or organization must do everything necessary to secure our rights and must do nothing after 'accident' or 'loss' to impair them."

{¶23} It is undisputed that Personal Service did not receive notice of the Ferrandos' UIM claim until approximately three and a half years after the accident. It is also undisputed that Personal Service had no opportunity to evaluate the Ferrandos' settlement with and release of the tortfeasor because it was not notified before the settlement and release took place, so that Personal Service was unable to exercise the subrogation rights retained by it in the insurance policy with the city. It is apparent that a breach of several of the applicable policy provisions may have occurred. We must consider the consequences of these possible breaches as we determine whether recovery in this case under the UIM coverage provided by Personal Service is unavailable as a matter of law, as the court of appeals held.

{¶24} Because this case comes to us a result of the trial court's ruling on the parties' summary judgment motions, we review this appeal consistent with the standards of Civ.R. 56(C). Summary judgment is appropriate when there is no genuine issue as to any material fact and reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, entitling the moving party to judgment as a matter of law. The evidence must be strongly construed in favor of the nonmoving party.

III

Overview of Case Law from Other States

{¶25} The court of appeals focused on two points in finding that UIM coverage was not available in the circumstances of this case for two separate reasons—the Ferrandos' breach of the prompt-notice provision of the policy and their breach of the consent-to-settle provision of the policy. Before we consider existing Ohio law on these questions, it will first be helpful to consider how the majority of jurisdictions determines the effect that breaches of these policy

provisions have on the availability of UIM coverage. There are certain similarities in the ways most jurisdictions evaluate breaches of both of these types of provisions. Although this case requires us to devote special attention to those cases that considered these questions in the context of UIM coverage, other cases not involving UIM coverage also apply many of the same standards supported by the same general reasoning and are included in our analysis where appropriate.

{¶26} The focus in these types of cases, for breach of either of those two policy provisions, is first on whether the provision is valid. Second, if the provision is valid, was it *actually* breached in the circumstances of the case? Third, if an actual breach occurred, was the breach a material breach that precludes coverage under the UIM policy or a technical breach that will not void coverage under the facts of the case?

{¶27} It is in how the materiality of the breach is determined that courts generally differ in their approach. A minority of states—those that follow the "traditional approach"—find all breaches to be material, with the result being that in those states a breach of a policy provision (such as a prompt-notice clause) by an insured seeking UIM coverage automatically relieves the UIM insurer of the obligation to provide coverage. States that follow the majority view, on the other hand, now have abandoned this traditional approach in favor of a modern trend that finds that a breach is material, so as to preclude coverage, only when the insurer is prejudiced by the breach.

{¶28} Some courts have looked to Restatement of the Law 2d, Contracts (1981), Section 241, "Circumstances Significant in Determining Whether a Failure is Material," to determine whether a particular breach was material, so that it discharges a UIM insurer from the obligation to provide coverage. Among the circumstances for consideration are "the extent to which the injured party will be deprived of the benefit which he reasonably expected," Section 241(a), and "the extent to which the party failing to perform * * * will suffer forfeiture," Section

241(c). See *Hernandez v. Gulf Group Lloyds* (Tex.1994), 875 S.W.2d 691, 693 ("The less the non-breaching party is deprived of the expected benefit, the less material the breach"; when the UIM insurer is not prejudiced by the breach, the insured's breach is not material).

{¶29} Within the group of states inquiring into prejudice, some states place the burden on the insurer to show prejudice, and some states place the burden on the insured to show a lack of prejudice.

A

Prompt-Notice Provisions

{¶30} In situations involving a breach of a requirement of prompt notice, most states find that the provision is valid, that the provision has been breached when notice was not reasonably given in the circumstances, but that the failure of notice will serve as a material breach of the insurance contract only when the unreasonable notice is prejudicial to the insurer. Many states place the burden of showing prejudice on the insurer, while a significant number of states place the burden on the insured. If notice is unreasonably given but the insurer suffers no prejudice, the breach is treated as nonmaterial and the insurer's obligation to provide coverage remains in effect.

1

Is Prejudice to the Insurer Relevant in Late-Notice UIM Cases?

{¶31} Two cases that illustrate the competing approaches of various states are *Alcazar v. Hayes* (Tenn.1998), 982 S.W.2d 845, and *Clementi v. Nationwide Mut. Fire Ins. Co.* (Colo.2001), 16 P.3d 223. In those cases, the Supreme Courts of Tennessee and Colorado recently decided to follow the modern trend requiring an inquiry into prejudice in delayed-notice UIM cases and overruled or disapproved of past decisions that had adhered to the traditional rule.

{¶32} In *Alcazar*, 982 S.W.2d at 848, a case involving an insured's attempt to recover from his UIM insurer despite the failure to give timely notice

of the accident giving rise to the claim, the court found the sole issue for its review to be "whether an insured, who fails to comply with the notice provision of his or her insurance policy, may nevertheless enforce the policy in the event that the insurer has not been prejudiced by the delay." The court noted that Tennessee for many years had adhered to the traditional common-law approach that notice is a condition precedent to recovery under the policy and that untimely notice vitiated any need for a showing of prejudice. Id. at 849, citing *Hartford Acc. & Indemn. Co. v. Creasy* (Tenn.1975), 530 S.W.2d 778, 779, which cited *Phoenix Cotton Oil Co. v. Royal Indemn. Co.* (1918), 140 Tenn. 438, 205 S.W. 128.

{¶33} The *Alcazar* court stated that this traditional approach is "grounded on a strict contractual interpretation methodology" with "underlying public policy rationales," such as that the insurer should be able to make a prompt and adequate investigation and prepare for defense of its claim, to protect against fraudulent claims, and be in a position to settle claims so that litigation can be minimized. *Alcazar*, 982 S.W.2d at 849, citing *Creasy*, 530 S.W.2d at 779, and quoting 1 Holmes & Rhodes, Appleman on Insurance (2d Ed.1996) 542, Section 4.30 ("An adequate investigation often cannot be made where notice is long delayed"); *Clementi*, 16 P.3d at 226-227.

{¶34} Very few courts today follow the traditional approach in notice cases. The *Alcazar* court, 982 S.W.2d at 850, noted that while the "overwhelming majority" of jurisdictions once followed the traditional approach, the number of jurisdictions that continue to apply that approach has "dwindled dramatically." "In recent years a 'modern trend' has developed, and a vast majority of jurisdictions now consider whether the insurer has been prejudiced by the insured's untimely notice." Id. See, also, Annotation, Modern Status of Rules Requiring Liability Insurer to Show Prejudice to Escape Liability Because of Insured's Failure or Delay in Giving Notice of Accident or Claim, or in

10

Forwarding Suit Papers (1984 & Supp.2002), 32 A.L.R.4th 141, 157, Section 5[a], 1984 WL 263380. Furthermore, in *Alcazar*, 982 S.W.2d at 853, the court stated that its "research indicates that only two states [New York and Colorado] whose highest courts have considered the issue within the last twenty years have continued to strictly adhere to the traditional approach." The cases cited in support of that statement were *Am. Home Assur. Co. v. Internatl. Ins. Co.* (1997), 90 N.Y.2d 433, 661 N.Y.S.2d 584, 684 N.E.2d 14, and *Marez v. Dairyland Ins. Co.* (Colo.1981), 638 P.2d 286. *Marez* was the case disapproved of two years after *Alcazar* was decided in *Clementi*, 16 P.3d at 224, in which the Supreme Court of Colorado rejected the traditional approach in late-notice UIM cases and followed the modern trend of requiring a prejudice inquiry in such cases.

{¶35} Moreover, the *Alcazar* court, 982 S.W.2d at 850, pointed to three pervasive rationales that support the shift to the modern trend of requiring prejudice in late-notice UIM cases to relieve an insurer of the obligation to provide coverage. The first is "the adhesive nature of insurance contracts." In support of this rationale, the court in *Alcazar* noted that "most insurance policies are form contracts drafted by the insurer, and the insured has little, if any, bargaining power." Id. See, also, *Brakeman v. Potomac Ins. Co.* (1977), 472 Pa. 66, 72, 371 A.2d 193 (the traditional view of the strict contractual approach "fails to recognize the true nature of the relationship between insurance companies and their insureds"); *Clementi*, 16 P.3d at 229, quoting from *Huizar v. Allstate Ins. Co.* (Colo.1998), 952 P.2d 342, 344 (courts bear a "heightened responsibility" to scrutinize policies that may compromise the interests of the insured).

{¶36} The second rationale that supports the modern trend, according to *Alcazar*, 982 S.W.2d at 850, is "the public policy objective of compensating tort victims." In *Brakeman*, 472 Pa. at 76, 371 A.2d 193, fn. 8, the court noted that there is a public interest in automobile insurance contracts of compensating accident victims, including innocent parties, and that this interest is not served by

an approach that prevents an accident victim from recovering from an insurer who was not prejudiced by the late notice.

**{¶37}** The third major rationale articulated in *Alcazar*, 982 S.W.2d at 850, that supports the modern trend is "the inequity of the insurer receiving a windfall due to a technicality." The *Alcazar* court reasoned that "notice requirements are devised in order to insulate the insurer from prejudice and, thus, in the absence of prejudice the notice provisions should not be strictly enforced." Id. at 851. Another way to look at this particular rationale is that the modern trend of requiring prejudice is concerned with the traditional rule's "severity of forfeiting one's insurance benefits based on the technical violation of a notice provision." *Clementi*, 16 P.3d at 230. See, also, *Brakeman*, 472 Pa. at 76, 371 A.2d 193 (for an insurance company, "which has collected full premiums for coverage, to refuse compensation to an accident victim or insured on the ground of late notice, where it is not shown timely notice would have put the company in a more favorable position, is unduly severe and inequitable").

**{¶38}** As noted in *Clementi*, 16 P.3d at 230, some courts that favor the modern trend support their position by pointing to the Restatement of the Law 2d, Contracts (1981), Section 229, which provides: "To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange." See, also, *Alcazar*, 982 S.W.2d at 853, which found that "the notice requirement is immaterial to the insurance contract in the event that the insurer is not prejudiced" and that otherwise a "disproportionate forfeiture" would ensue, as illustrated in Comment *b* to Section 229: "In determining whether the forfeiture is 'disproportionate,' a court must weigh the extent of the forfeiture by the obligee against the importance to the obligor of the risk from which he sought to be protected and the degree to which that protection will be lost if the non-occurrence of the condition is excused to the extent required

12

to prevent forfeiture. The character of the agreement may, as in the case of insurance agreements, affect the rigor with which the requirement is applied."

2

When Prejudice to the Insurer Is Relevant, Who Bears the Burden of Proof?

{¶39} In states that follow the modern trend and require a showing that an insurer has been prejudiced before the insurer will be discharged from the obligation to provide UIM coverage in a delayed-notice situation, there are three basic approaches to follow in deciding who should bear the burden of proof in showing prejudice.

{¶40} According to the *Alcazar* court, "A clear plurality of states hold that once it is demonstrated that the insured breached the notice provision, the burden of proof is allocated to the insurer to prove that it has been prejudiced by the breach." 982 S.W.2d at 853-854 (listing decisions). See, also, *Clementi*, 16 P.3d at 230-231 (listing decisions). One reason given for placing the burden of proof of prejudice on the insurer is that it is the insurer that is seeking to escape its obligations under an adhesive contract, so that the equities favor the insured party. See *Alcazar*, 982 S.W.2d at 854; *Clementi*, 16 P.3d at 231; *Brakeman*, 472 Pa. at 77, 371 A.2d 193. Another reason is that the insurer is in a better position to prove that there was prejudice than the insured party is to prove lack of prejudice, since the insured with the burden of proof must prove a negative—that the insurer was not prejudiced. *Alcazar*, 982 S.W.2d at 854; *Clementi*, 16 P.3d at 231-232.

{¶41} A number of states follow the second approach, finding that when the insured breaches the notice provision, a rebuttable presumption arises that the insurer is prejudiced by the breach. It is then up to the insured to rebut the presumption of prejudice in order to collect under the UIM policy. *Alcazar*, 982 S.W.2d at 854 (listing cases). See *Clementi*, 16 P.3d at 231 (listing cases); *Aetna Cas. & Sur. Co. v. Murphy* (1988), 206 Conn. 409, 419, 538 A.2d 219. The justifications for this approach are (1) that it is not inequitable to place the burden

of proof on the insured because that is the party who violated the contractual notice provision, and (2) that the insured, as the person who was involved in the accident, is better positioned to demonstrate that crucial information has not been lost and vital witnesses are still available. See *Alcazar*, 982 S.W.2d at 855. See, also, *Miller v. Dilts* (Ind.1984), 463 N.E.2d 257, 265-266 (possibility of adequate investigation by insurance company can be frustrated by delayed notice, so it is not unfair to require injured party to establish some evidence that prejudice to insurer did not result from the late notice).

{¶42} As a third possible approach in this type of case, a few states include prejudice to the insurer as one of several factors that are considered in determining whether the insured gave timely notice to the insurer. Other factors within that approach are the insured's excuse for the delay, the length of the delay, and the level of sophistication of the insured. See *Alcazar*, 982 S.W.2d at 855-856 (listing cases), and *Clementi*, 16 P.3d at 231. This approach was criticized as unsound in both *Alcazar* and *Clementi*, each of which reasoned that prejudice to the insurer is not a factor that has a bearing on the reasonableness of the insured's delay in giving notice and that the inquiry into reasonableness of notice and the inquiry into prejudice to the insurer are separate and distinct. See 982 S.W.2d at 855-856; 16 P.3d at 232.

{¶43} After determining that the traditional rule should be abandoned in favor of a rule that considers whether the insurer has been prejudiced in delayed-notice UIM cases, the courts in *Alcazar* and *Clementi* reached different conclusions on who should bear the burden of proof. In *Alcazar*, 982 S.W.2d at 856, the Supreme Court of Tennessee analogized the late-notice situation before it to one of unjust enrichment, in which "an undeserving party seeks forgiveness for his or her own breach." See, also, *Murphy*, 206 Conn. at 420, 538 A.2d 219 (unjust enrichment, restitution, and forfeiture are based on similar principles; party seeking extraordinary relief, based on what is "fair," should bear burden of

14

proof).  The *Alcazar* court found that when the insured failed to provide timely notice, and therefore breached the insurance policy, it is presumed that the UIM insurer has been prejudiced by the late notice.  The presumption of prejudice can be rebutted if the insured proffers "competent evidence that the insurer was not prejudiced by the insured's delay."  Id.

{¶44}  In *Clementi*, 16 P.3d at 231-232, the Supreme Court of Colorado agreed with those courts that determined that the burden should be on the insurer to demonstrate the existence of prejudice in late-notice UIM cases.  That court held that "once it has been established that an insured has unreasonably provided delayed notice to an insurer, an insurer may only deny benefits if it can prove by a preponderance of the evidence that it was prejudiced by the delay."  Id. at 232.

B

Consent-to-Settle and Other Subrogation-Related Provisions

{¶45}  The primary reason that consent-to-settle clauses are included in UIM policies is to protect the insurer's subrogation rights.  Many UIM insurance policies contain other, or additional, clauses that also have the primary purpose of furthering the insurer's subrogation rights.  Courts generally are consistent in applying the same approach in evaluating the effects of breaches of any of the subrogation-related clauses.  Therefore, we do not confine our review of cases to only those that involved consent-to-settle clauses, but also include cases that may have involved other subrogation-related provisions.

{¶46}  In situations involving breach of a consent-to-settle provision or a different provision concerned with protecting subrogation rights, most states find that the provision is valid, that the provision is breached when the insured settles with and releases a tortfeasor without giving the UIM insurer a reasonable opportunity to consent to the settlement (or to pay the insured in lieu of giving consent), and that the breach is material only when the insured is prejudiced by it. Of the states that inquire into prejudice, some states place the burden of showing

prejudice on the insurer, and some place the burden on the insured. Most of the focus in the prejudice inquiry is on whether the tortfeasor had enough assets beyond the limits of his or her liability insurance policy that the failure of the insured to obtain the consent of the insurer prior to the settlement and release of the tortfeasor destroyed the insurer's ability to recover additional damages from the tortfeasor.

{¶47} While most jurisdictions uphold consent-to-settle provisions, some states have found them invalid, either generally or in certain situations. See, e.g., *Longworth v. Van Houten* (App.Div.1988), 223 N.J.Super. 174, 184, 538 A.2d 414 (in a UIM context, a consent-to-settle provision "frustrates the legislative purpose of providing maximum and expeditious protection to the innocent victims of financially irresponsible motorists"); *Elovich v. Nationwide Ins. Co.* (1985), 104 Wash.2d 543, 553, 707 P.2d 1319 (consent-to-settle provision interferes with the legislative intent to grant the UIM insured a right to recover full compensation for injuries); *Coots v. Allstate Ins. Co.* (Ky.1993), 853 S.W.2d 895, 901 (for UIM coverage to accomplish its remedial purpose, "the UIM carrier's contractual subrogation right must not obstruct the UIM insured's right to settle for the policy limits even if it means releasing subrogation"). See, generally, Annotation, Validity, Construction, and Effect of "No-Consent-to-Settlement" Exclusion Clauses in Automobile Insurance Policy (1982 & Supp.2002), 18 A.L.R.4th 249, 276, Section 8, 1983 WL 198824.

{¶48} Among those states that recognize consent-to-settle provisions as valid, a few jurisdictions still follow the traditional rule and find that, as a matter of law, an insured who breaches a consent-to-settle clause (or other provision concerned with the insurer's subrogation interests) cannot recover from his or her UIM insurer. See, e.g., *Stevens v. Merchants Mut. Ins. Co.* (1991), 135 N.H. 26, 30, 599 A.2d 490 (holding that "enforcement of the permission to settle clause is not dependent on a showing of prejudice to the insurer"). See, also, *Dalke v.*

*Allstate Ins. Co.* (1997), 23 Kan.App.2d 742, 935 P.2d 1067 (failure of insured to notify UIM insurer of the settlement with and release of tortfeasor in accordance with state statute worked forfeiture of right to recover under UIM coverage; no need to consider prejudice to insurer); *Lee v. Auto-Owners Ins. Co.* (1996), 218 Mich.App. 672, 554 N.W.2d 610 (consent-to-settle clause to be enforced as written, without inquiring into prejudice); *Manzo v. AMICA Mut. Ins. Co.* (R.I.1995), 666 A.2d 417 (violation of consent-to-settle clause precludes UIM coverage as matter of law), but, see, *Fraioli v. Metro. Prop. & Cas. Ins. Co.* (R.I.2000), 748 A.2d 273, 275-276 (allowing an exception to the rule of *Manzo* "under the narrow facts" of the case).

{¶49} However, among most of the states that recognize consent-to-settle provisions as valid, an inquiry into prejudice is necessary following a breach of those or similar subrogation-related provisions before recovery under the UIM policy is forfeited. See, e.g., *Shelter Mut. Ins. Co. v. Bough* (1992), 310 Ark. 21, 834 S.W.2d 637; *Southeastern Fid. Ins. Co. v. Earnest* (Fla.App.1981), 395 So.2d 230; *State Farm Fire & Cas. Co. v. Pacific Rent-All, Inc.* (1999), 90 Hawaii. 315, 978 P.2d 753; *Bantz v. Bongard* (1993), 124 Idaho 780, 864 P.2d 618; *Kapadia v. Preferred Risk Mut. Ins. Co.* (Iowa 1988), 418 N.W.2d 848; *Greenvall v. Maine Mut. Fire Ins. Co.* (Me.1998), 715 A.2d 949; *MacInnis v. Aetna Life & Cas. Co.* (1988), 403 Mass. 220, 526 N.E.2d 1255; *Am. Family Mut. Ins. Co. v. Baumann* (Minn.1990), 459 N.W.2d 923; *Tegtmeyer v. Snellen* (Mo.App.1990), 791 S.W.2d 737; *Sorensen v. Farmers Ins. Exchange* (1996), 279 Mont. 291, 927 P.2d 1002; *Hernandez,* 875 S.W.2d 691; *Thiringer v. Am. Motors Ins. Co.* (1978), 91 Wash.2d 215, 588 P.2d 191; *Kronjaeger v. Buckeye Union Ins. Co.* (1997), 200 W.Va. 570, 490 S.E.2d 657; *Ranes v. Am. Family Mut. Ins. Co.* (1998), 219 Wis.2d 49, 580 N.W.2d 197.

{¶50} In those states that favor the majority approach, many of the same general principles that apply in situations involving breach-of-notice provisions in

UIM contracts also apply in situations involving breach of consent-to-settle or other subrogation-related provisions in UIM contracts. As in late-notice cases, there are strong indications that many courts considering policy breaches in cases involving consent-to-settle or other subrogation-related clauses generally are loath to sanction a forfeiture of coverage. See 3 Widiss, Uninsured and Underinsured Motorist Insurance (2d Rev.Ed.1998) 512-513, Section 43.5 ("There is now a significant body of judicial precedents for the proposition that in order to justify foreclosing an insured's right to indemnification from an otherwise applicable underinsured motorist coverage, an insurer must show that it was prejudiced by the settlement of the tort claim").

{¶51} Courts that impose a prejudice requirement in cases involving a breach of a consent-to-settle or other subrogation-related clause do so because of a perception that breaches of such provisions often have little prejudicial effect on the insurer's ability to protect its interests. "The loss of an insurer's subrogation right may not be significant. In many instances, pursuit of any recovery from an insured tortfeasor beyond the available liability insurance would be fruitless." Id. at 510. That proposition is illustrated by an example taken from an often quoted Florida appellate court decision:

{¶52} "There was overwhelming evidence that the negligent motorist, who was an impoverished maid, was completely judgment-proof. For this reason, the record fully supports the determination that the release was 'demonstrably immaterial' to any otherwise-existing ability of [the insurer] to recover. * * * A judgment against [the tortfeasor] would not have been worth the paper it was printed on and no reasonable person would have expended the costs, let alone the attorney's fees, it would have required to get it." *Earnest*, 395 So.2d at 231; see 3 Widiss, Uninsured and Underinsured Motorist Insurance, at 510.

{¶53} As in cases involving an inquiry into UIM insurer prejudice in delayed-notice cases, some states in cases inquiring into UIM insurer prejudice

involving breach of a consent-to-settle or other subrogation-related provision place the burden of showing prejudice on the insurer, and some states place the burden of showing a lack of prejudice on the insured. An example of the former is *Greenvall*, 715 A.2d at 954, in which the Supreme Judicial Court of Maine required the insurer to demonstrate that prejudice resulted from the loss of subrogation rights before recovery under the UIM policy could be denied. See, also, *Sorensen*, 279 Mont. at 296, 927 P.2d 1002. Alternatively, in *Ranes*, 219 Wis.2d at 61-62, 580 N.W.2d 197, the Supreme Court of Wisconsin imposed a rebuttable presumption of prejudice, placing "the onus on the breaching party who failed to provide notice." See, also, *Baumann*, 459 N.W.2d at 927.

IV

Decisions of This Court

{¶54} Now that the general approach to breaches of these two clauses has been set forth, we consider what the current approach in Ohio is. Several recent precedents of this court have considered fact patterns in which notice and/or consent-to-settle (or similar) provisions were alleged to have been breached. We will review those decisions in some detail, as they provide the specific context for our inquiry.

{¶55} For our purposes, there are three types of fact situations that must be distinguished from each other to illustrate the spectrum of possible scenarios in these cases. First, several of the recent cases in this court, *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447; *McDonald v. Republic-Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456; and *Fulmer v. Insura Prop. & Cas. Co.* (2002), 94 Ohio St.3d 85, 760 N.E.2d 392, have involved an alleged breach of a consent-to-settle clause and/or a provision implicating subrogation rights, in a situation that did not also involve any issue regarding notice. Second, two of the recent cases decided by this court, *Ruby v. Midwestern Indemn. Co.* (1988), 40 Ohio St.3d 159, 532 N.E.2d 730; and *Hartford Cas. Ins.*

*Co. v. Easley* (1991), 62 Ohio St.3d 232, 581 N.E.2d 526, involved an alleged breach of a subrogation-related provision and an alleged failure of notice of some type. Finally, while no recent decisions of this court have involved an alleged breach of a prompt-notice provision with no accompanying issue of a breach of a consent-to-settle or subrogation provision in a UIM coverage context, several courts of appeals that have encountered that situation have relied on the reasoning in the above cases to resolve those disputes, and we include that situation to round out our overall inquiry.

A

Asserted Violation of Subrogation-Related Provision But Not of Notice

Provision—*Bogan, McDonald,* and *Fulmer*

{¶56} In *Bogan*, 36 Ohio St.3d at 22-25, 521 N.E.2d 447, the insured parties were involved in an automobile accident with a tortfeasor and claimed that their damages exceeded the tortfeasor's policy limit. After the accident, the insureds promptly notified their UIM insurer of a potential claim and soon after sought the consent of their UIM insurer to their settlement with and release of the tortfeasor for an amount less than the tortfeasor's policy limit. The UIM insurer did not consent to the settlement, but the insureds settled with and released the tortfeasor anyway and then filed suit against their insurer for UIM coverage. As the case came to this court, several clauses in the insurance policy were at issue, including a consent-to-settle clause, an exhaustion clause, and a standard subrogation clause.

{¶57} This court's opinion yielded five syllabus paragraphs. Of those, three syllabus paragraphs (paragraphs one, three, and five) involved the circumstances under which a UIM provider may withhold consent to a proposed settlement with the tortfeasor. Those syllabus paragraphs and the analyses that gave rise to them are not directly relevant to the case sub judice because the UIM insurer in this case never had notice of the settlement with and release of the

tortfeasor before it was accomplished. Another syllabus paragraph (paragraph two) involved the exhaustion clause in the policy and also is not directly relevant to the issues raised in this case.

{¶58} The only part of *Bogan* that is specifically relevant to the issues we consider is paragraph four of the syllabus. That syllabus paragraph provides:

{¶59} "Based upon the established common law and further strengthened by the specific statutory provision, R.C. 3937.18, a subrogation clause is reasonably includable in contracts providing underinsured motorist insurance. Such a clause is therefore both a valid and enforceable precondition to the duty to provide underinsured motorist coverage."

{¶60} In the body of the *Bogan* opinion supporting this syllabus paragraph, this court stated, "[A] right of subrogation, the protection of which is a precondition to underinsured motorist coverage, is a full and present right in and of itself wholly independent of whether a later judgment obtained by use of such right will be reduced to collection from the tortfeasor. * * * It is, therefore, both just and reasonable that an insurer require, as a precondition to coverage, not that such subrogation rights *will* result in reimbursement to the insurer, but that the injured party not compromise with the tortfeasor in such a way as to destroy the insurer's subrogation right. Such compromise clearly prejudices the present subrogation right of the injured party's insurer." (Emphasis sic.) Id. at 31, 521 N.E.2d 447.

{¶61} Based on the foregoing reasoning, this court in *Bogan* in effect held that when an insured party seeking coverage from its UIM insurer has executed a settlement with and release of the tortfeasor precluding the insurer from exercising its subrogation rights, a material breach of the insurance contract has occurred that discharges the UIM insurer from the obligation to provide UIM coverage.

{¶62} The Ferrandos argue that this court's subsequent decisions in *McDonald* and *Fulmer* have eroded the part of *Bogan* that is relevant to this case to the point that the reasoning in *Bogan* is no longer supportable and urge that we should finish the process by overruling paragraph four of the syllabus of *Bogan,* since in the Ferrandos' view it has for all intents and purposes been overruled already. While it is apparent that *McDonald* and *Fulmer* have modified or overruled significant parts of *Bogan*, the core reasoning in *Bogan* that is implicated in this case remains untouched by those decisions, and we cannot fault the court of appeals below for applying *Bogan* to find UIM coverage unavailable. If we do reconsider the rationale of *Bogan* as pertinent to the issues in this case, it is not because *Bogan*'s syllabus paragraph four has been sub silentio overruled in those cases, but because we perceive flaws in the essential reasoning underlying that syllabus paragraph.

{¶63} In *McDonald*, this court revisited one of the issues raised in *Bogan*, deciding that, in some cases when an insurer fails to consent to the settlement with and release of a tortfeasor, the insured party seeking UIM coverage may still be able to recover under the UIM policy, even though the insurer's subrogation rights may have been destroyed. This court modified paragraph five of the syllabus of *Bogan* regarding an insurer who does not consent to a proposed settlement with and release of the tortfeasor after notification, and found that a subrogation clause would be voided if the insurer failed to respond within a reasonable time to notification of the settlement offer. 45 Ohio St.3d at 30-31, 543 N.E.2d 456.

{¶64} It is important to note that *McDonald*, like *Bogan*, involved a UIM insurer that had received prompt notice from its insured of the proposed settlement and therefore is significantly different in its facts from the instant case. One statement from *McDonald* that is relevant to the situation we consider is the court's observation that "an insured who destroys his insurer's subrogation rights

22

without the insurer's knowledge does so at his peril." 45 Ohio St.3d at 31, 543 N.E.2d 456.

{¶65} *Fulmer*, like *Bogan* and *McDonald*, involved an insured party who notified her UIM insurer of a negotiated settlement with and release of the tortfeasor (for less than the tortfeasor's policy limits) and who did not receive consent to the settlement. The insured settled despite the lack of consent and sought recovery under the UIM policy. *Fulmer*, 94 Ohio St.3d at 86-88, 760 N.E.2d 392. This court's opinion addressed issues regarding the lack of consent of the insurer to the settlement, destruction of the insurer's subrogation rights, and the alleged breach of the exhaustion clause of the policy. This court, in paragraph one of the syllabus of *Fulmer*, formally overruled paragraph five of the syllabus of *Bogan*, regarding the consequences of the insurer's own failure to act to protect its subrogation rights. Also, at paragraph two of the syllabus of *Fulmer,* this court applied and clarified *Bogan*'s reasoning in paragraph two of the syllabus of that case regarding exhaustion clauses that were at issue in both cases. However, this court's opinion in *Fulmer* did not consider *Bogan*'s fourth syllabus paragraph, and that syllabus paragraph and supporting discussion remain very relevant to our inquiry.

B

Asserted Violation of Both Subrogation-Related Provision and Notice

Provision—*Ruby* and *Easley*

{¶66} In *Ruby*, the insureds notified their insurance agent 11 months after the accident at issue that they had a potential claim under their UIM policy and later asked their UIM insurer to approve a settlement with the tortfeasor's insurance company. The insureds did not get consent from their UIM insurer to settle but settled anyway with the tortfeasor's insurance company for the tortfeasor's policy limits and released the tortfeasor's estate. 40 Ohio St.3d at 159-160, 532 N.E.2d 730.

**{¶67}** This court concluded in a less than totally clear opinion that the insureds "so interfered with the subrogation rights of [the UIM insurer] that the underinsurance liability of [the UIM insurer] should be completely discharged." Id. at 160, 532 N.E.2d 730. This court noted that the UIM policy under consideration required that if an accident occurred, prompt notice be provided to the insurer and also required the insured party to protect the insurer's subrogation rights. Id. at 161, 532 N.E.2d 730. In *Ruby*, this court held at the syllabus, "A provision in an insurance policy requiring 'prompt' notice to the insurer requires notice within a reasonable time in light of all the surrounding facts and circumstances." In finding that the insureds "failed to meet the crucial precondition of protecting" the UIM insurer's subrogation rights, this court reasoned that "unreasonable delay in the giving of notice may be presumed prejudicial to the insurer absent evidence to the contrary." Id. at 161, 532 N.E.2d 730.

**{¶68}** The court went on to state: "We need not decide whether an eleven-month delay is so unreasonable that prejudice should be presumed, as there is ample evidence that [the UIM insurer] was in fact prejudiced by the delay." Id. One of the reasons given for the finding of prejudice was that the delay in notice deprived the UIM insurer of an opportunity to investigate the claim. Id. Another was that the insureds, by executing a release that precluded the UIM insurer from exercising its subrogation rights, materially breached their insurance contract and thereby discharged the insurer from the coverage obligation. Id. at 162, 532 N.E.2d 730. As support for this reason, this court cited *Bogan*, 36 Ohio St.3d at 31, 521 N.E.2d 447.

**{¶69}** Because the case sub judice, like *Ruby*, involves breaches of both a prompt-notice provision and a subrogation provision, *Ruby* is the most relevant precedent from this court in our consideration. We note that in this case, unlike in *Ruby*, there was no request for the consent of the UIM insurer before the

settlement with and release of the tortfeasor occurred, so that the two cases are not identical factually. However, *Ruby*'s underlying rationale, especially in the way it tied the lack of prompt notice with the prejudicial effects of the destruction of subrogation rights, remains valid precedent despite its somewhat unfocused analysis.

{¶70} It may be helpful to point out that there are two different types of "notice" inquiries that actually are possible in the types of cases we consider as relevant to this case and that should not be confused. Both of these notice inquiries are present in the case sub judice. One of those inquiries focuses on a "prompt notice" clause specifically contained in an insurance policy that requires that an insured promptly give notice of an accident or claim to the UIM insurer. The other type of notice at issue is the notice inquiry that can be an inherent part of the question whether a consent-to-settle clause was complied with. For an insured to obtain consent from a UIM insurer to a proposed settlement, the insured first must give notice to the insurer that a settlement is being contemplated.

{¶71} In *Bogan*, *McDonald*, and *Fulmer*, neither of the two notices was at issue, as both types of notice had been provided. In *Ruby*, the notice inquiry focused on the insured's alleged failure to promptly notify the UIM insurer of the accident at issue. The insured, however, had given the UIM insurer notice of the contemplated settlement prior to its later finalization without the insurer's consent. It appears that this court's focus in *Ruby* was more on the subrogation aspects of that case than on the notice aspects. In this case, Personal Service claims that the Ferrandos failed to give prompt notice of the accident or claim, as specifically required by the policy. At the same time, it is undisputed that Personal Service never received notice of the proposed settlement before it was finalized.

**{¶72}** In *Easley*, the alleged failure of notice was not a breach of a prompt-notice provision in a UIM policy but an alleged failure of notice to the UIM insurer of a specific UIM claim prior to a proposed, and then finalized, settlement with and release of the tortfeasor. The insurer contended in a motion for summary judgment, and the trial court and court of appeals both found, that no UIM benefits were available because the failure of notice of the settlement, along with the subsequent release, prejudiced the insurer's subrogation rights. Id., 62 Ohio St.3d at 234, 581 N.E.2d 526.

**{¶73}** In reversing the judgment of the court of appeals, this court focused on what it termed a "notable distinction" that made the case factually different from similar cases such as *McDonald*. 62 Ohio St.3d at 235, 581 N.E.2d 526. That fact was that the person who was attempting to recover under the UIM policy (Easley) was not a named insured under the policy, but was someone who had borrowed the named insured's automobile with permission, so that there was no contractual relationship between Easley and the automobile owner's UIM insurer. This court noted that Easley had attempted to notify the UIM insurer, but that the owner of the automobile, for some reason, impeded Easley's efforts to determine whether UIM coverage existed and to find out details of that possible coverage, stating that "Easley was confronted with a difficult, if not impossible, task of determining the existence of any underinsurance benefits that Easley may have been entitled to receive." Id.

**{¶74}** Consequently, this court concluded that "a genuine issue of material fact exists as to whether [the UIM insurer] received notice of Easley's underinsurance claim before the release * * * was executed." This court further concluded that an issue of material fact existed as to whether the notice received by the UIM insurer gave it a reasonable time to respond to Easley, pursuant to paragraph three of the syllabus of *McDonald*. *Easley*, 62 Ohio St.3d at 235-236, 581 N.E.2d 526.

**{¶75}** In the case sub judice, as in *Easley*, the Ferrandos make a claim under a policy of insurance in which they are not named insureds, and they have no contractual relationship with Personal Service. This salient fact is relevant to whether Personal Service received reasonable notice of their UIM claim, which will be discussed later in this opinion.

C

Asserted Violation of Prompt-Notice Provision But Not of Subrogation-Related Provision

**{¶76}** This court has not considered a case involving a breach of a prompt-notice provision in a UIM context when there was no accompanying issue regarding compromise of the UIM insurer's subrogation rights. In a case that did not involve motor vehicle insurance coverage, *Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau* (2000), 88 Ohio St.3d 292, 302-303, 725 N.E.2d 646, this court explained the general reasons underlying notice provisions:

**{¶77}** "Notice provisions in insurance contracts serve many purposes. Notice provisions allow the insurer to become aware of occurrences early enough that it can have a meaningful opportunity to investigate. *Ruby v. Midwestern Indemn. Co.* (1988), 40 Ohio St.3d 159, 161, 532 N.E.2d 730, 732. In addition, it provides the insurer the ability to determine whether the allegations state a claim that is covered by the policy. It allows the insurer to step in and control the potential litigation, protect its own interests, maintain the proper reserves in its accounts, and pursue possible subrogation claims. Further, it allows insurers to make timely investigations of occurrences in order to evaluate claims and to defend against fraudulent, invalid, or excessive claims." (Citations omitted.)

**{¶78}** In the portion of its opinion addressing the Ferrandos' alleged breach of the notice provision, the court of appeals determined that it was necessary to inquire into insurer prejudice before UIM coverage will be forfeited for breach of a notice provision. The court of appeals relied on *Ormet*, *Ruby*, and

several Ohio appellate decisions to support its conclusion that a presumption of prejudice arises when an insured gives unreasonably late notice to a UIM insurer, and to place the burden on the insured to present evidence to rebut the presumption of prejudice.

{¶79} To the extent that the court of appeals required an inquiry into insurer prejudice before UIM coverage would be forfeited for breach of a prompt-notice provision, we fully agree with the reasoning of the court of appeals, finding it consistent with previous pronouncements of this court. This court in *Ruby*, 40 Ohio St.3d at 161, 532 N.E.2d 730, stated, "Unreasonable delay in the giving of notice may be presumed prejudicial to the insurer absent evidence to the contrary." Furthermore, in *Ormet*, this court determined that the untimely notice of an environmental claim by the insured party prejudiced the insurers under the facts of that case. Id. at 305, 725 N.E.2d 646. By inquiring into prejudice to the insurer in that case, instead of finding that the unreasonably late notice in and of itself caused a forfeiture of the coverage, this court indicated that Ohio does not follow the traditional rule in late-notice cases but follows the modern trend of inquiring into prejudice. Although *Ormet* was not a UIM case and did not involve motor vehicle insurance, its core reasoning is applicable here.

{¶80} We recognize that the court of appeals' determination in this case that a presumption of prejudice applies and that the insured bears the burden of overcoming it is directly drawn from this court's reasoning in *Ruby*. Ohio's law on this portion of our inquiry therefore is consistent with that of Tennessee, as established in *Alcazar*, 982 S.W.2d 845, which reasoned that the insured, as the party that breached a provision in the insurance policy and seeks relief from the consequences of that breach, should bear the burden of showing that the insurer was not prejudiced.

{¶81} Accordingly, we hold that when an insurer's denial of UIM coverage is premised on the insured's breach of a prompt-notice provision in a

28

policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary.

V

Paragraph Four of the Syllabus of *Bogan* Reassessed

{¶82} We turn now to considering that portion of the court of appeals' decision regarding the consequences of a breach of a consent-to-settle clause in a UIM policy. The court of appeals applied paragraph four of the syllabus of *Bogan* to determine that there is no need to inquire into insurer prejudice when such a clause is breached. By providing in paragraph four of the syllabus that compliance with a subrogation clause is a "precondition" to UIM coverage, and by stating in the body of the opinion that if the insured compromises with the tortfeasor in a way that destroys the UIM insurer's subrogation right, then the insurer is prejudiced (see 36 Ohio St.3d at 31, 521 N.E.2d 447), *Bogan* in effect mandated the ultimate conclusion reached in the case sub judice by the court of appeals. Accordingly, the trial court's resolution of this issue was not consistent with *Bogan*. The trial court decision did not cite *Bogan* and gave no reasons for not following it.

{¶83} As an initial matter, we accept the *Bogan* court's determination, expressed in the first sentence of paragraph four of the syllabus of that case, that subrogation clauses are valid provisions in UIM policies. As do the majority of states, we find consent-to-settle clauses valid and enforceable in Ohio.

{¶84} However, our consideration of all the factors discussed thus far makes it evident that the time has come to reconsider the second sentence of paragraph four of the syllabus of *Bogan*. As explained above, our precedents essentially require that UIM coverage be forfeited for breach of a prompt-notice provision only when the insurer is prejudiced by that breach. We see no reason

for a breach of a consent-to-settle clause or other subrogation-related provision in a UIM policy to be evaluated any differently than a breach of a prompt-notice provision. It is not logical that the breach of a notice provision should necessitate an inquiry into prejudice while the breach of a consent-to-settle provision should be deemed prejudicial to the insurer in all cases as a matter of law. To be consistent, the same fundamental inquiry should be applied in either case.

{¶85} Furthermore, the rule requiring an inquiry into prejudice is the accepted rule in a significant majority of states, and this rule also appears sound when applied in cases involving breach of a consent-to-settle or other subrogation-related provision; a clear majority of states also require an inquiry into prejudice in those cases. The reasons relied on by a majority of states, detailed above, to impose a prejudice requirement in such cases are compelling.

{¶86} This case presents an opportunity to harmonize the standards for evaluating two very comparable situations that implicate essentially the same interests and present no persuasive reasons for differing rules. As the Supreme Judicial Court of Massachusetts stated in *MacInnis*, 403 Mass. at 223, 526 N.E.2d 1255: "Because the purpose of a consent-to-settlement provision is essentially similar to that of a notice of claim provision (both give an insurer notice and an opportunity to protect its interests), the prejudice standard should apply to both." See, also, *Greenvall*, 715 A.2d at 954 (court's holding in prior case that insurer must suffer prejudice from breach of notice provision in order to deny coverage should be extended to require demonstration of prejudice for denial of coverage based on loss of subrogation rights).

{¶87} As in cases involving a breach of a prompt-notice provision, a presumption of prejudice should be applied when evaluating the effects of the breach of a consent-to-settle or other subrogation-related provision. As in breach of prompt-notice cases, we find that the burden of presenting evidence to show a lack of prejudice should be on the insured who has failed to comply with the

terms of the policy. An additional reason for applying a presumption of prejudice with the burden of presenting evidence on the insured is that the General Assembly has specifically allowed a right of subrogation to providers of UIM coverage. See *Bogan*, 36 Ohio St.3d at 29, 521 N.E.2d 447 (quoting R.C. 3937.18[E], now R.C. 3937.18[J]); *Ruby*, 40 Ohio St.3d at 160-161, 532 N.E.2d 730; *McDonald*, 45 Ohio St.3d at 29, 543 N.E.2d 456. However, simply because the General Assembly has allowed subrogation does not prevent courts from inquiring into insurer prejudice when a subrogation-related clause is not strictly complied with. If the insurer has suffered no prejudice from the insured's technical breach, it is difficult to justify permitting the insurer to deny coverage.

{¶88} For those reasons, we join the majority of states and hold that when an insurer's denial of UIM coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights. An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary. We therefore overrule in part paragraph four of the syllabus of *Bogan,* and disagree with *Bogan*'s accompanying rationale to the extent that it held that a consent-to-settle provision is an absolute precondition to recovery that is materially breached whenever it is not complied with. We also disapprove of any reasoning within *Bogan*, *Ruby,* and *McDonald* that is inconsistent with our holding.

VI

Application of the Standards Discussed Above

A

General Application

{¶89} Based on our discussion thus far, a court evaluating whether a prompt-notice or consent-to-settle (or other subrogation-related) provision in a

UIM policy was breached, and, if so, the effects of the breach, must conduct a two-step inquiry as described in further detail below. The first step is to determine whether a breach of the provision at issue actually occurred. The second step is, if a breach did occur, was the insurer prejudiced so that UIM coverage must be forfeited? See *Clementi*, 16 P.3d at 231 (two-step approach is appropriate in late-notice cases: preliminary determination is whether an insured's notice was untimely; second step is whether the insurer was prejudiced by the untimely notice).

{¶90} The two-step approach in late-notice cases requires that the court first determine whether the insured's notice was timely. This determination is based on asking whether the UIM insurer received notice "within a reasonable time in light of all the surrounding facts and circumstances." *Ruby*, syllabus. If the insurer did receive notice within a reasonable time, the notice inquiry is at an end, the notice provision was not breached, and UIM coverage is not precluded. If the insurer did *not* receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut.

{¶91} In cases involving the alleged breach of a consent-to-settle or other subrogation-related clause, the first step is to determine whether the provision actually was breached. If it was not, the inquiry is at an end, and UIM coverage must be provided. Also, if the insurer failed to respond within a reasonable time to a request for consent to the settlement offer, or unjustifiably withheld consent, the release will not preclude recovery under the UIM policy, and the subrogation clause will be disregarded. *McDonald*, paragraphs two and three of the syllabus; *Fulmer*, paragraph one of the syllabus. If the consent-to-settle or other subrogation-related clause *was* breached, the second step is to determine whether the UIM insurer was prejudiced. If a breach occurred, a presumption of prejudice

to the insurer arises, which the insured party bears the burden of presenting evidence to rebut.

B

Application to the Facts of This Case

{¶92} In this case, it is clear that the consent-to-settle clause was breached. However, it is not clear that the prompt-notice provision was breached, even though notice was not given immediately. The Ferrandos were required to give notice within a reasonable time "in light of all the surrounding facts and circumstances." *Ruby*, syllabus.

{¶93} It is logical that the longer the delay in giving notice, the more likely that the notice was unreasonable, in that a lengthy delay is more apt to frustrate the purposes of a prompt-notice clause. However, we decline to establish a rule in this case that a delay in notice of a particular length of time is unreasonable in all cases. We simply find that, under the specific facts of this case, the notice was not so late to be unreasonable as a matter of law.

{¶94} The inquiry into reasonableness of the notice is specifically complicated by one fact in this case. The Ferrandos' UIM claim against Personal Service is under the *city's* policy with that insurer and is not through any contract of insurance that the Ferrandos themselves ever had with Personal Service. The Ferrandos promptly notified their own UIM insurer, Auto-Owners, of their potential claim but were unaware that the city's policy with Personal Service might also provide a source of UIM coverage.

{¶95} That the Ferrandos were not named insureds to the Personal Service policy does not relieve them of the responsibility to comply with its terms. In *Bantz*, supra, 124 Idaho at 785, 864 P.2d 618, the Supreme Court of Idaho concluded that "a third party beneficiary of an insurance policy must comply with all the terms and provisions of an insurance policy which apply to that beneficiary. It would be manifestly unfair to allow a third party beneficiary

to collect the benefits of the insurance policy without fulfilling the obligations therein." In *Easley*, this court did not excuse the third party seeking UIM coverage from complying with the policy's provisions but recognized that when an additional insured seeks to recover under a UIM policy, special circumstances can complicate the inquiry into the reasonableness of the notice provided.

{¶96} In this case, there is therefore an initial question of fact whether the notice provided by the Ferrandos was reasonable. The general approach to this question is described in Annotation, Liability Insurance: Timeliness of Notice of Accident by Additional Insured (1973), 47 A.L.R.3d 199, 202, Section 2[a], 1973 WL 33743:

{¶97} "[C]ourts have generally construed such language [requiring that prompt notice of an accident be given to an insurer] to mean that notice must be given within a reasonable time under the circumstances of the case. * * *

{¶98} "Where coverage is sought by an additional insured, that is, by a person who is not the named insured under the policy * * * the most common reason for failure of such additional insured to give timely notice to the named insured's insurer is that the additional insured was not aware of the fact that he was covered under the policy issued to the named insured. Courts have generally held that where an additional insured's ignorance of coverage is understandable, and where notice is given promptly after the additional insured becomes aware of possible coverage, even a long period of delay is excusable * * *. However, courts place limits on their liberality with respect to excusing delayed notice by holding generally that ignorance of coverage is no excuse where the additional insured failed to exercise due diligence in investigating possible coverage, a caveat which is usually invoked where the facts are such that the additional insured should have looked into the matter of coverage sooner than he did." (Footnotes omitted.) See, also, *Burke v. Liberty Mut. Ins. Co.* (1994), 201 A.D.2d 773, 607 N.Y.S.2d 483 ("an additional insured's ignorance of the policy

34

provisions will excuse his failure to satisfy its requirements only if the lack of knowledge is reasonable under all the circumstances").

{¶99} The trial court resolved that issue in favor of the Ferrandos, finding that they were reasonable in notifying Personal Service once they discovered that coverage existed. However, the trial court's decision makes no mention of whether the Ferrandos should have made a more diligent inquiry into the existence of UIM coverage under the Personal Service policy than they did. The Ferrandos never supplied any evidence to support their claim to the trial court that such coverage is rarely provided in a city's policy such as this one. In light of our decision today, such an inquiry is relevant to this question, and the Ferrandos have raised an issue of fact as to the reasonableness of their notice.

{¶100} The trial court also found that Personal Service was not prejudiced by the late notice. However, if the Ferrandos' notice was reasonably given, there would have been no need to consider whether the insurer was prejudiced. We agree with the *Alcazar* and *Clementi* courts that the reasonableness inquiry and the prejudice inquiry are separate and distinct. To the extent that the trial court may have considered a possible lack of prejudice as a factor going to the reasonableness of the Ferrandos' notice, we disapprove of that approach.

{¶101} We therefore hold that a genuine issue of material fact exists as to whether the Ferrandos' notice to Personal Service was reasonably given. The resolution of that issue will determine whether further inquiry is necessary regarding the delayed-notice issue. If as a factual matter notice was reasonably given, then no breach of the prompt-notice policy provision occurred, and the insurer's obligation to provide coverage is not excused pursuant to that provision. However, if the trial court determines that notice was not reasonably given, then a breach of the policy did occur, and the next step is for the trial court to determine whether the insurer was prejudiced by that breach. In its initial determination, it is not clear which party the trial court assigned the burden of demonstrating

prejudice. Pursuant to our decision today, the insured party bears the burden of presenting evidence to rebut a presumption of prejudice.

{¶102} This answer as to whether notice was reasonably given will also play a role in determining the amount of prejudice to the insurer from the failure of the Ferrandos to get the consent of Personal Service to settle with the tortfeasor. The trial court failed to follow paragraph four of the syllabus of *Bogan* in evaluating this issue and should have held, given *Bogan*'s validity at the time, that the Ferrandos were not entitled to UIM coverage due to their breach of the consent-to-settle provision. Therefore, the trial court should not have inquired into insurer prejudice on this particular issue. However, since we have now overruled *Bogan*'s holding that a subrogation clause is an absolute condition to coverage, prejudice to the insurer is relevant.

{¶103} It is apparent that the consent-to-settle clause was breached in this case, but the prejudicial effect on the insurer may be minimal, depending on the value of the subrogation rights sought to be protected. The fact that Auto-Owners gave the Ferrandos consent to settle with the tortfeasor for his policy limits should have some effect on the resolution of the prejudice question, but the record is devoid of evidence as to why that permission was given, and further inquiry into that issue is warranted pursuant to the standards set forth in this opinion.

{¶104} In conclusion, there is a genuine issue of material fact as to whether the Ferrandos provided reasonable notice of this accident to Personal Service, the provider of the UIM coverage at issue. If reasonable notice was not provided, then there is a genuine issue of material fact as to whether Personal Service was prejudiced by the Ferrandos' breach of the prompt-notice provision. While it is apparent that the Ferrandos breached the consent-to-settle provision of the UIM policy, there is a genuine issue of material fact as to whether Personal Service was prejudiced by that breach. We reverse the judgment of the court of

appeals and remand this cause to the trial court for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., concurs in paragraph one of the syllabus and dissents from paragraph two of the syllabus, the opinion, and the judgment.

LUNDBERG Stratton, J., concurs in part and dissents in part.

COOK, J., dissents.

_____

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶105} I concur with paragraph one of the syllabus; however, I respectfully dissent from paragraph two of the syllabus that overrules, in part, paragraph four of the syllabus of *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447. There are different reasons behind the consent-to-settle or subrogation clause that I believe justify enforcing the contract clause without any inquiry into prejudice caused by a breach.

{¶106} The consent-to-settle provision in the policy preserves the insurer's right of subrogation against the tortfeasor. A number of factors might influence an insurer's decision whether to consent to a settlement, including but not limited to the insurer's business practices, the particular policy limits, the policy language, the claims history of the insured, a cost-benefit analysis of the claim, and the potential for reimbursement from the tortfeasor. If the insured breaches the consent-to-settle or subrogation provisions of the policy, the insured's right of subrogation is destroyed. Once destroyed, the right is gone forever. Consequently, destruction of that existing right by a third party, through no fault of the insurer, is prejudicial as a matter of law. The insurer is denied the

opportunity to investigate, while the third party may have had little incentive to investigate or preserve evidence. The insurer is unable to protect against fraud and collusion or to determine whether its subrogated claim is collectible or whether the tortfeasor is judgment-proof. The insurer should be the party to ultimately decide whether to pursue its subrogation rights.

{¶107} In Ohio, the right of subrogation is recognized by statute and by the courts. It does not depend upon whether the insurer will be successful in exercising the right. *Bogan* described an insurer's right of subrogation as "a full and present right in and of itself wholly independent of whether a later judgment obtained by use of such right will be reduced to collection from the tortfeasor." 36 Ohio St.3d at 31, 521 N.E.2d 447. It is " 'real and existing' " when a settlement releases the tortfeasor. Id. The *Bogan* court, therefore, concluded that it was "both just and reasonable that an insurer require, as a precondition to coverage, not that such subrogation rights *will* result in reimbursement to the insurer, but that the injured party not compromise with the tortfeasor in such a way as to destroy the insurer's subrogation right. Such compromise clearly prejudices the present subrogation right of the injured party's insurer." (Emphasis sic.) Id.

{¶108} By requiring a factual inquiry into the prejudicial effect of any breach, the majority is now injecting more uncertainty into the insurance industry and creating more litigation. It renders meaningless contractual provisions of the policy and the statutory right of subrogation. It will require a factual inquiry every time there is a breach of the consent-to-settle or subrogation provisions and place the decision about subrogation in the hands of courts and juries instead of with the insurer. Furthermore, all the time and money spent to determine the value, if any, of the subrogation right is for naught, since the tortfeasor has already been released from any further liability.

{¶109} As an Ohio court reasoned, "whether subrogation rights have been destroyed or the insurance carrier prejudiced thereby should not be determined on a case by case basis depending on the collectibility of the tortfeasor. Just because the tortfeasor may appear to be uncollectible today does not mean he or she will be uncollectible tomorrow. The tortfeasor may inherit a fortune, win the lottery or secure a lucrative employment. The collectibility of the underlying tortfeasor is irrelevant in determining whether an insurance carrier is prejudiced by its insured's destruction of its subrogation rights." *Ungur v. Buckeye Union Ins. Co.* (Mar. 26, 2002), Cuyahoga C.P. No. 448778, at 5.

{¶110} Here, the insurer's subrogation right is rooted in Ohio case law, contract, and statute. In the event of an insured's breach of the consent-to-settle or subrogation provisions of the insurance policy, there should be no need to prove actual prejudice to relieve the insurer of the obligation to provide coverage. Therefore, I respectfully dissent from paragraph two of the syllabus.

_____

Nurenberg, Plevin, Heller & McCarthy Co., L.P.A., and Kathleen J. St. John, for appellants.

Baker & Hackenberg and I. James Hackenberg, for appellee.

Elk & Elk Co., L.P.A., and Todd O. Rosenberg, urging reversal for amicus curiae Ohio Academy of Trial Lawyers.

Bricker & Eckler, L.L.P., Kurtis A. Tunnell, Anne Marie Sferra and Robert Katz, urging affirmance for amici curiae American Insurance Association, National Association of Independent Insurers, Alliance of American Insurers, Ohio Chapter of the National Federation of Independent Business, Ohio Manufacturer's Association, Ohio Farm Bureau Federation, Ohio Chemistry Technology Council, and Ohio Council of Retail Merchants.

Keener, Doucher, Curley & Patterson, W. Charles Curley and Jenifer J. Murphy, urging affirmance for amicus curiae Ohio Association of Civil Trial Attorneys.

_____