OPINION
{¶ 1} Appellants The Personal Service Insurance Company ("PSIC") and Westfield Insurance Company ("Westfield") appeal the decision of the Stark County Court of Common Pleas that found Appellees Glenn and Cheryl Werstler entitled to UM/UIM coverage under PSIC's policy issued to Stark County and Westfield's policy issued to the Stark County Department of Human Services.
 {¶ 2} The traffic accident giving rise to this appeal occurred on August 5, 1999, at the intersection of State Route 44 and Easton Road in Nimishillen Township. At the time of the accident, Appellee Glenn Werstler was driving a 1996 Dodge Caravan owned by his employer, Liberty Vending, Inc. Appellee Werstler's vehicle collided with a 1995 Dodge pick-up truck operated by R. Stephen Jackson. Jackson negligently caused the accident when he failed to obey a stop sign and drove into the path of Appellee Werstler's vehicle. As a result of the accident, Appellee Werstler sustained brain damage and injuries to other parts of his body including his face, eyes, forearm, back and groin.
 {¶ 3} Following the accident, Appellee Werstler presented a liability claim against Jackson, who was insured by Amica Mutual Insurance Company. Jackson's liability insurance limit totaled $500,000. Appellees eventually reached a settlement, with Jackson, in the amount of $483,513.97. Both the Werstlers and Westfield, who insured Liberty Vending, Inc., consented to the settlement. The policy Westfield issued to Liberty Vending, Inc. provided UM/UIM coverage in the amount of $500,000. Westfield, as the insurer of Liberty Vending, Inc., advanced $16,486.03 to the Werstlers with the understanding that Westfield was entitled to explore whether or not it would be entitled to any type of pro-rata reimbursement from PSIC.
 {¶ 4} At the time of the accident, Cheryl Werstler was employed with the Child Support Enforcement Bureau of Stark County. Appellees' claims against PSIC are made under the terms of an insurance policy that PSIC issued to Stark County. On December 6, 2001, PSIC filed a complaint for declaratory judgment. PSIC's complaint arose out of claims for UIM coverage made by appellees under the policy of insurance PSIC issued to the named insured Stark County. Appellees answered PSIC's complaint and filed a counterclaim for declaratory judgment on January 17, 2002.
 {¶ 5} Both PSIC and appellees filed motions for summary judgment. The trial court granted appellees' motion for summary judgment and denied PSIC's motion for summary judgment on April 25, 2002. During the discovery process, the parties learned that the Stark County Department of Human Services was also insured by a policy issued by Westfield. Cheryl Werstler's employer, the Child Support Enforcement Agency of Stark County, is a division of the former Stark County Department of Human Services. Thereafter, in April 2002, PSIC amended its complaint to add Westfield as a defendant.
 {¶ 6} Subsequently, appellees filed a cross-claim against Westfield seeking UM/UIM coverage under its policy. Westfield and appellees both filed motions for summary judgment. The trial court granted appellees' motion for summary judgment and denied Westfield's motion for summary judgment on July 10, 2002. PSIC and Westfield filed separate notices of appeal. We consolidated the appeals on November 8, 2002.
 {¶ 7} PSIC sets forth the following assignments of error for our consideration:
 {¶ 8} "I. Because the insurance policy issued by the appellant at issue in this case does not include `family member' language in the definition of `insured,' the trial court erred in granting the appellees' motion for summary judgment and in denying the appellant's motion for summary judgment.
 {¶ 9} "II. The trial court erred, as a matter of law, when it relied upon language contained in a `medical payments' coverage endorsement to the insurance policy issued by appellant for purposes of imputing underinsured motorists coverage, inasmuch as medical payments coverage is not motor vehicle or automobile liability insurance to which R.C. § 3937.18 is applicable.
 {¶ 10} "III. Underinsured motorists coverage, if any, is available to the appellee Cheryl Werstler (and her spouse) through her actual employer's commercial auto policy issued by Westfield Insurance Company and not under the appellant's policy issued to Stark County, and consequently the trial court erred in granting the appellees' motion for summary judgment and in denying the appellant's motion for summary judgment.
 {¶ 11} "IV. The trial court erred by granting the appellees' motion for summary judgment and denying appellant's motion for summary judgment, since the policy issued by appellant to a political subdivision is not a motor vehicle or automobile liability insurance policy to which R.C. § 3937.18 is applicable, as a matter of law."
 {¶ 12} Westfield sets forth the following assignment of error for our consideration:
 {¶ 13} "I. The trial court erred in granting the motions for summary judgment of the plaintiff and the Werstler Defendants and denying Westfield's motion for summary judgment and in declaring that Glenn and Cheryl Werstler are entitled to underinsured motorist coverage under a policy of insurance issued by Westfield Insurance Company to Stark County Department of Human Services since the Werstlers did not comply with applicable conditions of the Westfield Policy including timely notice and preservation of subrogation rights."
 "Summary Judgment Standard" {¶ 14} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 15} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 16} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citingDresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. It is based upon this standard that we review PSIC's and Westfield's assignments of error.
 "PSIC's Assignments of Error" I {¶ 17} In its First Assignment of Error, PSIC maintains that because its policy of insurance does not contain "family member" language in the definition of "insured," the trial court erred when it granted appellees' motion for summary judgment finding appellees entitled to UM/UIM coverage under its policy issued to Stark County. We agree.
 {¶ 18} The policy PSIC issued to Stark County does not contain UM/UIM coverage. Therefore, appellees seek to have UIM coverage imputed, in PSIC's policy, by operation of law. The only way such coverage may be imputed by operation of law is pursuant to the Ohio Supreme Court's decision in Ezawa v. Yasuda Fire Marine Ins. Co., 86 Ohio St.3d 557,1999-Ohio-124. In Ezawa, the Ohio Supreme Court extended its holding inScott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292, and held that UM/UIM coverage is available to corporate employee's "family members." Thus, the decision, in Ezawa, was based upon the actual terms and provisions of an uninsured motorists endorsement to the employer's policy.
 {¶ 19} In the case sub judice, we must examine the policy at issue to determine whether it contains "family member" language thereby entitling Appellee Glenn Werstler to UIM coverage by operation of law. The language in PSIC's liability portion of its policy provides, in pertinent part:
 {¶ 20} "BUSINESS AUTO COVERAGE FORM
 {¶ 21} "* * *
 {¶ 22} "Throughout this policy the words `you' and `your' refer to the Named Insured shown in the Declaration. * * *
 {¶ 23} "* * *
 {¶ 24} "SECTION II — LIABILITY COVERAGE
 {¶ 25} "A. COVERAGE
 {¶ 26} "We will pay all sums an `insured' legally must pay as damages because of `bodily injury' or `property damage' to which this insurance applies, caused by an `accident' and resulting from the ownership, maintenance or use of a covered `auto.'
 {¶ 27} "* * *
 {¶ 28} "1. WHO IS AN INSURED
 {¶ 29} "The following are `insureds':
 {¶ 30} "a. You for any covered `auto'.
 {¶ 31} "b. Anyone else while using with your permission a covered `auto' you own, hire or borrow except:
 {¶ 32} "(2) Your employee if the covered `auto' is owned by that employee or a member of his or her household.
 {¶ 33} "* * *
 {¶ 34} "c. Anyone else who is not otherwise excluded under paragraph b. above and is liable for the conduct of an `insured' but only to the extent of that liability."
 {¶ 35} It is undisputed that Appellee Glenn Werstler was not using a "covered auto," at the time of the accident, and that he does not qualify as someone who would be liable for the conduct of an "insured." It is also apparent that the definition of "insured" contained in PSIC's liability portion of its policy does not contain the "family member" language which the Ohio Supreme Court relied upon in Ezawa to impute UM/UIM coverage by operation of law.
 {¶ 36} This court recently addressed a policy containing the identical language contained in PSIC's liability portion of its policy defining "Who is an Insured." In Walton v. Continental Cas. Co., Holmes App. No. 02CA002, at 2, 2002-Ohio-3831, we held:
 {¶ 37} "Pursuant to Scott-Pontzer and its progeny, we find the `you' portion of the definition of an `insured' includes employees of Worthington Industries [the named insured] * * *. Therefore, an employee, such as appellant's mother, would be entitled to UIM benefits under the Continental policy. However, the definition of `insured' in the Continental policy does not contain the `if you are an individual, any family member' language found in the Pontzer policy. We find the absence of this language precludes a finding appellant was an `insured' under the Continental policy." Id. at 2.
 {¶ 38} Relying upon our decision, in Walton, we reached a similar result in Szekeres v. State Farm Fire and Cas. Co., Licking App. No. 02CA00004, at 6, 2002-Ohio-5989. Based upon these recent decisions, we conclude an employee of Stark County, such as Appellee Cheryl Werstler, would be entitled to UIM benefits under PSIC's liability portion of its policy. However, because the definition of "insured" does not contain the "if you are an individual, any family member" language found in theScott-Pontzer policy, Appellee Glenn Werstler is not an "insured" under the liability portion of PSIC's policy.
 {¶ 39} PSIC's First Assignment of Error is sustained.
 II {¶ 40} PSIC maintains, in its Second Assignment of Error, the trial court erred when it relied upon language contained in the medical payments coverage endorsement for purposes of imputing underinsured motorist coverage because the mandatory offering of UM/UIM coverage as required by R.C. 3937.18 does not apply to such coverage. We agree.
 {¶ 41} In its judgment entry, the trial court concluded Appellee Glenn Werstler was entitled to underinsured motorists coverage under PSIC's policy of insurance issued to Stark County because of the definition of "Who is an Insured" contained in an endorsement for "Auto Medical Payments Coverage." The pertinent language of the endorsement provides:
 {¶ 42} "2. If you are an individual, any `family member' while `occupying' or, while a pedestrian, when struck by an `auto.' "
 {¶ 43} In reaching this conclusion, the trial court relied upon the Ohio Supreme Court's decision in Ezawa, supra, and the use of "family member" language in the endorsement.
 {¶ 44} On appeal, PSIC contends that medical payments coverage is not liability coverage and therefore, is not governed by R.C. 3937.18. Appellees respond that Glenn Werstler is an "insured" under the medical payments coverage endorsement, by use of the "family member" language, and that this endorsement modifies the terms of the original contract of insurance. Thus, appellees conclude Glenn Werstler is an "insured" under the contract of insurance and pursuant to the Ohio Supreme Court's decision in Gyori v. Johnston Coca-Cola Bottling Grp., 76 Ohio St.3d 565,1996-Ohio-358, since PSIC failed to offer him UM/UIM coverage, such coverage arises by operation of law.
 {¶ 45} As early as 1982, the Eighth District Court of Appeals, inKatanik v. State Farm Mut. Auto. Ins. Co. (1982), 8 Ohio App.3d 76, held that: "R.C. 3937.18 applies to uninsured motorist provision of an automobile liability insurance policy, not to the medical payments provision of that policy." Id. at paragraph one of the syllabus. The Ohio Supreme Court reached this same conclusion in Karabin v. State Auto.Mut. Ins. Co. (1984), 10 Ohio St.3d 163, wherein the Court stated, "* * * medical payments coverage is neither mandated nor governed by statute. It is thus simply a matter of contract between the insurer and insured." Id. at 166. Thus, "* * * the scope of coverage for automobile medical payments coverage is governed exclusively by the applicable insurance contract." Motorist Ins. Cos. v. Podsedly (May 23, 1985), Cuyahoga App. No. 49084, at 4.
 {¶ 46} In addition to the above case law, the version of R.C.3937.18 in effect at the time PSIC issued its policy to Stark County clearly provided that the mandatory offering of UM/UIM coverage only applied to "automobile liability" or "motor vehicle liability" policies. There is no mention in R.C. 3937.18 that UM/UIM coverage must also be offered under a medical payments coverage endorsement. This conclusion is consistent with the fact that the medical payments coverage endorsement is simply a matter of contract between the parties. Therefore, the type of coverage provided in the medical payments coverage endorsement of a motor vehicle liability policy and the parties to be insured by such coverage are terms of the insurance contract to be negotiated between the insurer and insured.
 {¶ 47} Accordingly, we conclude the trial court erred when it relied upon the definition of "insured" contained in the medical payments coverage endorsement for purposes of imputing underinsured motorist coverage for Appellee Glenn Werstler because the mandates of R.C. 3937.18
do not apply to medical payments coverage.
 {¶ 48} PSIC's Second Assignment of Error is sustained.
 {¶ 49} We will not address PSIC's Third and Fourth Assignments of Error as we find them moot based upon our disposition of PSIC's First and Second Assignments of Error.
 "Westfield's Assignment of Error" I {¶ 50} In its sole assignment of error, Westfield maintains appellees failed to comply with the conditions of its policy issued to the Stark County Department of Human Services, including timely notice and preservation of subrogation rights, and therefore, appellees are not entitled to UM/UIM coverage under said policy. For the reasons stated in the recent decision of Ferrando v. Auto-Owners Mut. Ins. Co.,98 Ohio St.3d 186, 2002-Ohio-7217, we remand this matter to the trial court for the court to determine whether Westfield was prejudiced by the delay in notice and failure to protect subrogation rights.
 {¶ 51} Westfield's policy contains the following conditions:
 {¶ 52} "2. Duties In The Event Of Accident, Claim, Suit or Loss
is changed by adding the following:
 {¶ 53} "* * *
 {¶ 54} "c. A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the `insured' and the insurer of the vehicle described in Paragraph F.3.b. of the definition of `uninsured motor vehicle' and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle."
 {¶ 55} "* * *
 {¶ 56} "3. Transfer Of Rights Of Recovery Against Others To Us is amended by adding the following:
 {¶ 57} If we make any payment and the `insured' recovers from another party, the `insured' shall hold the proceeds in trust for us and pay us back the amount we have paid."
 {¶ 58} In its judgment entry, the trial court concluded Westfield's arguments regarding notice, subrogation and prejudice were without merit. Judgment Entry, July 10, 2002, at 3. On appeal, Westfield maintains it was prejudiced due to appellees' breach of the prompt-notice provision and failure to protect its subrogation rights when appellees settled with Jackson prior to notifying Westfield of their intention to seek UM/UIM coverage under Westfield's policy of insurance issued to the Stark County Department of Human Services. Further, as a result of the settlement, Westfield maintains that any subrogation rights which it may have had against Jackson have been extinguished.
 {¶ 59} In response, appellees contend Westfield was on notice and had an opportunity to protect its subrogation rights because it gave consent to Liberty Vending, Inc., Appellee Glenn Werstler's employer, on September 17, 2001, to settle and release Jackson, from the proceedings, when his insurance company, Amica Mutual Insurance Company, offered its policy limits of $500,000. Thus, appellees contend they satisfied their duties to provide prompt notice and protect Westfield's subrogation rights, under the policy Westfield issued to the Department of Human Services, when it provided such timely notice under the policy Westfield issued to Appellee Glenn Werstler's employer, Liberty Vending, Inc.
 {¶ 60} As noted above, the Ohio Supreme Court recently addressed the issue of breaches of prompt-notice and subrogation provisions in the Ferrando case. In that case, the Court held:
 {¶ 61} "1. When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary.
 {¶ 62} "2. When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights. An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary." Id. at paragraphs one and two of the syllabus.
 {¶ 63} Thus, we remand this matter, to the trial court, for the court to follow the two step inquiry set forth in Ferrando. In late-notice cases, the Court explained the two-step approach as follows:
 {¶ 64} "* * * [T]he court first determine whether the insured's notice was timely. This determination is based on asking whether the UIM insurer received notice `within a reasonable time in light of all the surrounding facts and circumstances.' * * * If the insurer did receive notice within a reasonable time, the notice inquiry is at an end, the notice provision was not breached, and UIM coverage is not precluded. If the insurer did not receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut." (Emphasis sic.) Id. at 21.
 {¶ 65} As it pertains to consent-to-settle or other subrogation-related clauses, the Court explained:
 {¶ 66} "* * * [T]he first step is to determine whether the provision actually was breached. If it was not, the inquiry is at an end, and UIM coverage must be provided. Also, if the insurer failed to respond within a reasonable time to a request for consent to the settlement offer, or unjustifiably withheld consent, the release will not preclude recovery under the UIM policy, and the subrogation clause will be disregarded. * * * If the consent-to-settle or other subrogation-related clause was breached, the second step is to determine whether the UIM insurer was prejudiced. If a breach occurred, a presumption of prejudice to the insurer arises, which the insured party bears the burden of presenting evidence to rebut." (Emphasis sic.) Id.
 {¶ 67} Westfield's sole assignment of error is sustained.
 {¶ 68} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby reversed and remanded for further proceedings consistent with this opinion.
By: Wise, J., Gwin, P.J., and Farmer, J., concur.
Topic: Scott-Pontzer.