OPINION
{¶ 1} Appellants Republic-Franklin Insurance Company ("RFI") and Utica Mutual Insurance Company ("Utica") appeal the decision of the Stark County Court of Common Pleas that found UIM coverage under three policies of insurance issued to Jeter Systems Corporation ("Jeter Systems"), the employer of the decedent's brother and sister, James Fish and Lori Michalec. The following facts give rise to this appeal.
 {¶ 2} This lawsuit is the result of an accident that occurred on April 19, 1996, when an automobile driven by Richard Williams struck Kenneth Fish's motorcycle. Kenneth Fish died as a result of the injuries he sustained in the accident. At the time of his death, Kenneth Fish was survived by two minor children; his mother, Karen Fish; his father, Cecil Fish, Jr.; his sister, Lori Michalec; and two brothers, Jason Fish and James Fish. On October 30, 1996, Karen Fish, as the Administrator of Kenneth Fish's Estate, settled with the tortfeasor, for the policy limits of $12,500 and released his automobile liability insurance carrier, Colonial Insurance Company of California.
 {¶ 3} The Estate of Kenneth Fish also received UIM benefits from Allstate Insurance Company ("Allstate"), the personal UM/UIM carrier of Karen and Cecil Fish. Allstate paid its UIM coverage limit of $50,000, less a setoff for the $12,500 received from the tortfeasor. Thereafter, on June 22, 2001, appellees filed a declaratory judgment action seeking UIM coverage under various policies. For purposes of this appeal, the policies at issue are a business auto policy issued by RFI, an umbrella policy issued by RFI and a commercial general liability policy ("CGL") issued by Utica. All three of these policies were issued to Jeter Systems, the employer of the decedent's brother and sister, James Fish and Lori Michalec, and were in effect on the date of the decedent's death. The policies at issue contain the following endorsements and coverage limits. RFI's business auto policy contains express UM/UIM coverage in the amount of $500,000. RFI's umbrella policy contains express UM/UIM coverage in the coverage amount of $5 million. Utica's CGL policy provides liability coverage in the amount of $500,000 for each occurrence.
 {¶ 4} In their declaratory judgment action, Kenneth Fish, Karen Fish, Cecil Fish, Jr., James Fish and Lori Michalec seek UIM coverage under both the commercial auto policy and umbrella policy issued by RFI. As employees of Jeter Systems, James Fish and Lori Michalec seek UIM coverage under the CGL policy issued by Utica. Appellees, RFI and Utica briefed the UIM coverage issues in motions for summary judgment. In a judgment entry filed on December 17, 2002 and a nunc pro tunc judgment entry filed on December 19, 2002, the trial court found UIM coverage existed, for appellees, under all three policies.
 {¶ 5} RFI and Utica filed a notice of appeal and set forth the following assignments of error for our consideration:
 {¶ 6} "I. DEFENDANT (SIC)-APPELLANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW FOR THE REASON THAT PLAINTIFF(SIC)-APPELLEES FAILED TO REBUT THE PRESUMPTION OF PREJUDICE CREATED BY THEIR UNREASONABLY LATE NOTICE AND DESTRUCTION OF SUBROGATION RIGHTS.
 {¶ 7} "II. THE VALET PARKING AND MOBILE EQUIPMENT PROVISIONS CONTAINED IN THE UTICA COMMERCIAL GENERAL LIABILITY POLICY ARE INCIDENTAL TO THE OVERALL TYPE OF COVERAGE PROVIDED AND DO NOT MAKE IT A MOTOR VEHICLE LIABILITY POLICY SUBJECT TO THE MANDATORY OFFER REQUIREMENTS OF FORMER R.C. 3937.18.
 {¶ 8} "III PLAINTIFF(SIC)-APPELLEES ARE NOT INSUREDS UNDER THE UTICA COMMERCIAL GENERAL LIABILITY POLICY IN LIGHT OF VAILD PROVISIONS LIMITING COVERAGE TO ACTS WITHIN THE SCOPE OF EMPLOYMENT.
 {¶ 9} "IV. THE BROADENED COVERAGE ENDORSEMENT TO THE REPUBLIC-FRANKLIN COMMERCIAL AUTO POLICY LISTS AN INDIVIDUAL AS AN INSURED THEREBY ELIMINATING THE CORPORATION AMBIGUITY AT ISSUE INSCOTT-PONTZER.
 {¶ 10} "V. PLAINTIFF(SIC)-APPELLEES ARE NOT INSUREDS UNDER THE REPUBLIC-FRANKLIN COMMERCIAL AUTO POLICY AS THAT POLICY TERM IS DEFINED FOR THE REASON THAT COVERED AUTOS ARE CONTEMPLATED WITHIN THAT DEFINITION."
 "Summary Judgment Standard" {¶ 11} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 12} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 13} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107.
 {¶ 14} It is based upon this standard that we review appellants' assignments of error. We will first address the assignments of error concerning the coverage issues. We will then address appellants' First Assignment of Error concerning late notice and destruction of subrogation rights.
 II {¶ 15} In their Second Assignment of Error, appellants maintain Appellees James Fish and Lori Michalec, as employees of Jeter Systems, are not entitled to coverage under Utica's CGL policy. We agree.
 {¶ 16} In support of this assignment of error, Utica contends its CGL policy is not a motor vehicle liability policy subject to the mandatory offering of UM/UIM coverage required by R.C. 3937.18. Utica's CGL policy contains "valet parking" and "mobile equipment" provisions. We have previously concluded, in Heidt v. Federal Ins. Co., Stark App. No. 2002CA00314, 2003-Ohio-1785, that the inclusion of these provisions, in a CGL policy, do not transform the policy into a motor vehicle liability policy thereby requiring the mandatory offering of UM/UIM coverage. Id. at ¶ 29.
 {¶ 17} As in the case sub judice, the Heidt case involved a pre-H.B. 261 CGL policy. Heidt addressed both the "valet parking" and "mobile equipment" provisions. As to the "valet parking" provision, we stated as follows:
 {¶ 18} "* * * In Szekeres [v. State Farm and Cas. Co., Licking App. No. 02CA00004, 2002-Ohio-5989], this court explained that it was overruling its previous decision in Cox v. State Farm Fire and Cas. Co., Licking App. No. 2001CA00117, 2002-Ohio-3076, a pre-H.B. 261 case that held a CGL policy containing a `valet parking' provision was a motor vehicle liability policy thereby requiring the mandatory offering of UM/UIM coverage under R.C. 3937.18.
 {¶ 19} "The Cox case relied upon this court's decision in Burkhartv. CNA Ins. Co., Stark App. No. 2001CA00265, 2002-Ohio-903. In Burkhart, a pre-H.B. 261 case, we found that `valet parking' and `mobile equipment' provisions transformed a CGL policy into a motor vehicle policy which required the mandatory offering of UM/UIM coverage.
 {¶ 20} "In overruling Cox, we explained in Szekeres, that a `valet parking' provision is not a motor vehicle provision but a property damage provision. Id. at 4. Thus, Szekeres, a pre-H.B. 261 case, concluded the CGL policy was not a motor vehicle liability policy even though it contained a `valet parking' provision. Therefore, a `valet parking' provision does not transform a CGL policy into a motor vehicle liability policy under either the pre-H.B. 261 version of R.C. 3937.18 or the post-H.B. 261 version of R.C. 3937.18." Id. at ¶ 29-¶ 31.
 {¶ 21} In addressing the "mobile equipment" provision, inHeidt, we concluded as follows:
 {¶ 22} "* * * [T]he type of coverage provided is for bodily injury or property damage as a result of the use of `mobile equipment.' As inHillyer [v. State Farm Fire and Cas. Co., 97 Ohio St.3d 411,2002-Ohio-6662], the fact that an automobile may be involved because a cherry picker is mounted to it is incidental to coverage. An insured is entitled to recover, not because an automobile or truck is involved, but because of the type of equipment attached to the automobile or truck. Further, the other `mobile equipment' defined in the policy clearly refers to a limited class of equipment not primarily designed to transport people on public roads.
 {¶ 23} "Finally, the policy clearly provides, in Section F of the definition of `mobile equipment,' that the equipment referred to in paragraphs F.2. and F.3. are not `mobile equipment' but are to be considered `autos.' `Autos' are specifically excluded from coverage according to the bodily injury/property damage exclusions contained in the policy. Therefore, the `mobile equipment' provision does not convert the CGL policy into a motor vehicle liability policy requiring UM/UIM coverage to be offered." Id. at ¶ 34-¶ 35.
 {¶ 24} Utica's CGL policy contains the identical "mobile equipment" language that we reviewed in Heidt. Utica's policy also clearly provides that "autos" are specifically excluded from coverage according to the injury/property damage exclusions.
 {¶ 25} Accordingly, for the reasons set forth in Heidt, we conclude the "valet parking" and "mobile equipment" provisions contained in Utica's CGL policy do not transform the policy into a motor vehicle liability policy thereby requiring the mandatory offering of UM/UIM coverage even though the policy pre-dates the H.B. 261 version of R.C.3937.18.
 {¶ 26} Appellants' Second Assignment of Error is sustained.
 III {¶ 27} In their Third Assignment of Error, appellants contend appellees are not insureds under Utica's CGL policy because survivorship benefits did not arise for acts within the scope of James Fish's and Lori Michalec's employment. We will not address the merits of this assignment of error having determined, in the Second Assignment of Error, that Utica's CGL policy is not a motor vehicle liability policy subject to the mandates of R.C. 3937.18.
 {¶ 28} Appellants' Third Assignment of Error is overruled as moot.
 IV {¶ 29} Appellants' Fourth Assignment of Error concerns RFI's business auto policy. RFI contends, in this assignment of error, that its business auto policy contains a "Drive Other Car — Broadened Coverage for Named Individuals" endorsement and therefore, theScott-Pontzer ambiguity does not exist. We disagree.
 {¶ 30} In Still v. Indiana Ins. Co., Stark App. No. 2001CA00300,2002-Ohio-1004, we held:
 {¶ 31} "Upon reviewing the automobile policy in the instant case, we fail to find that the endorsement to the policy including these two individuals distinguishes this case from Scott-Pontzer * * * in that the ambiguity still exists, i.e. the policy still list[s] the corporation as the name[d] insured, thereby extending coverage to the corporation's employees." Id. at 3.
 {¶ 32} We have reached this same conclusion in Amore v. GrangeIns. Co., Richland App. No. 02CA75, 2003-Ohio-3208; Dalton v. LumbermensMut. Ins. Co., Stark App. No. 2002CA00198, 2003-Ohio-2897; Moore v.Hartford Fire Ins. Co., Delaware App. No. 02CAE-10-048, 2003-Ohio-2037;Heidt v. Federal Ins. Co., Stark App. No. 2002CA00314, 2003-Ohio-1785;Jordan v. Travelers Prop. Cas. Ins. Co., Stark App. No. 2002CA00248,2003-Ohio-1309; Pahler v. Motorists Mut. Ins. Co., Stark App. No. 2002CA00022, 2002-Ohio-5762.
 {¶ 33} Accordingly, we conclude the inclusion of Tamara Jeter, in the "Drive Other Car Coverage — Broadened Coverage for Named Individuals" endorsement, in RFI's business auto policy, does not remove the Scott-Pontzer ambiguity. Therefore, James Fish and Lori Michalec, as employees of Jeter Systems, are insureds under RFI's business auto policy. Further, pursuant to the Ohio Supreme Court's decision in Ezawav. Yasuda Fire Marine Ins. Co., 86 Ohio St.3d 557, 1999-Ohio-124, Karen Fish, Cecil Fish, Jr., Kenneth Fish and his estate, as resident family members of James Fish, are also insureds under RFI's business auto policy.
 {¶ 34} Appellants' Fourth Assignment of Error is overruled.
 V {¶ 35} Appellants maintain, in their Fifth Assignment of Error, that appellees are not entitled to coverage under RFI's business auto policy because coverage extends only to "covered autos" and, in the case sub judice, coverage is not sought for a covered auto. We disagree.
 {¶ 36} RFI's business auto policy defines "covered autos" as autos that are owned by Jeter Systems and listed in the policy's Declarations. In Item Two, found in the Declarations of the policy, it provides that UM/UIM coverage extends to autos represented by the symbol "2." The Covered Autos Section of the Business Auto Coverage Form defines symbol "2" as "Owned `Autos' Only." The policy specifies twelve autos as "covered autos." RFI maintains that because the accident causing Kenneth Fish's death did not involve a "covered auto," appellees are not insureds under the policy.
 {¶ 37} The language RFI relies upon in support of its argument is what is commonly called the "other owned vehicle exclusion." Miller v.Grange Mut. Cas. Co., Stark App. No. 2002CA00058, 2002-Ohio-5763, at ¶ 12. "* * * [T]he exclusion provides that the insurance does not apply to an insured or the insured's family member while occupying or struck by any vehicle owned by the insured or the family member which is not a covered auto." Id.
 {¶ 38} In Martin v. Midwestern Grp. Ins. Co. (1994),70 Ohio St.3d 478, the Ohio Supreme Court held this exclusion in UIM coverage was unenforceable because it violates R.C. 3937.18. However, R.C. 3937.18 was amended effective September 3, 1997. The amended statute provides that UM/UIM coverage may include terms and conditions that preclude coverage of bodily injury suffered by an insured when the insured is operating or occupying a motor vehicle owned, furnished to, or available for the regular use of the named insured, a spouse, or a resident relative if the motor vehicle is not specifically identified in the policy under which the claim is made, or is not a newly acquired or replacement vehicle for a motor vehicle covered under the terms of the policy.
 {¶ 39} RFI's business auto policy indicates a policy period from January 15, 1996 to January 15, 1997. According to Ross v. Farmers Ins.Grp. of Cos., 82 Ohio St.3d 281, 1998-Ohio-381, "[f]or the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Id. at syllabus. The law in effect at the time RFI issued the business auto policy to Jeter Systems was the Ohio Supreme Court's decision in Martin. Accordingly, the "other owned auto exclusion" is unenforceable and appellees, who qualify as insureds under the business auto policy, were not required to be in a "covered auto" in order to receive UIM coverage under said policy.
 {¶ 40} Appellants' Fifth Assignment of Error is overruled.
 VI {¶ 41} Appellants do not specifically set forth a Sixth Assignment of Error. However, they do raise the argument, in their brief, that RFI's umbrella policy is an excess policy that does not provide appellees with coverage. We disagree.
 {¶ 42} Both appellants and appellees, in their respective briefs, agree that the umbrella policy is an excess policy and that said policy provides excess UIM coverage once the UIM benefits of RFI's business auto policy and Utica's CGL policy have been exhausted. Since we determined, in appellants' Second Assignment of Error, that Utica's CGL policy is not a motor vehicle policy, James Fish and Lori Michalec would not be entitled to receive UIM benefits from RFI's umbrella policy. Therefore, appellees may only receive UIM benefits from RFI's umbrella policy if they exhaust the policy limits of RFI's business auto policy.
 {¶ 43} Appellants' Sixth Assignment of Error is overruled.
 I {¶ 44} We turn now to appellants' First Assignment of Error concerning the issues of late notice and destruction of subrogation rights. Appellants maintain appellees failed to rebut the presumption of prejudice created by their unreasonably late notice and destruction of subrogation rights. We will address this assignment of error only as it pertains to RFI's business auto policy and umbrella policy since we have previously determined that no coverage exists under Utica's CGL policy.
 {¶ 45} The accident giving rise to this lawsuit occurred in April 1996. RFI did not receive notice of the accident until shortly before appellees filed their lawsuit in 2001. RFI concludes appellees' claims are barred because it did not receive notice until after Karen Fish, as Administrator of the Estate of Kenneth Fish, settled with the tortfeasor. RFI contends appellees destroyed its subrogation rights as a result of late notice. In support of its argument, RFI refers to the UM/UIM endorsements contained in its business auto policy and umbrella policy.
 {¶ 46} The pertinent language in RFI's business auto policy provides as follows:
 {¶ 47} "2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:
 {¶ 48} "a. Promptly notify the police if a hit-and-run driver is involved, and
 {¶ 49} "b. Promptly send us copies of the legal papers if a `suit' is brought.
 {¶ 50} "c. A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the `insured' and the insurer of the vehicle described in Paragraph F.3.b. of the definition of `uninsured motor vehicle' and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in Paragraph F.3.b. of the definition of `uninsured motor vehicle." (Emphasis sic.)
 {¶ 51} The business auto policy additionally states that:
 {¶ 52} "3. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US is amended by adding the following:
 {¶ 53} "If we make any payment and the `insured' recovers from another party, the `insured' shall hold the proceeds in trust for us and pay us back the amount we have paid."
 {¶ 54} RFI's umbrella policy contains the following language:
 {¶ 55} "3. Duties in the Event of Incident, Wrongful Act, Claim or Suit
 {¶ 56} "a. You must see to it that we are notified promptly of an `incident' or `wrongful act' which may result in a claim to which the insurance applies. To the extent possible, notice should include:
 {¶ 57} "(1) How, when and where the `incident' or `wrongful act' took place;
 {¶ 58} "(2) The names and addresses of any injured persons and witnesses; and
 {¶ 59} "(3) The nature and location of:
 {¶ 60} "(a) Any `injury' arising out of the `incident'; or
 {¶ 61} "(b) Any harm arising out of the `wrongful act.' "
 {¶ 62} In Ferrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186,2002-Ohio-7217, the Ohio Supreme Court addressed the late notice and destruction of subrogation issues. The Court held in the syllabus:
 {¶ 63} "1. When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary.
 {¶ 64} "2. When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights. An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary. * * *"
 {¶ 65} The record indicates the trial court did not have the benefit of the Ferrando decision in determining these issues. Therefore, we remand this matter, to the trial court, for the court to determine whether appellees provided reasonable notice of this accident to RFI. If reasonable notice was not provided, the trial court must determine whether RFI was prejudiced by appellees' breach of the prompt-notice provision. As to the consent-to-settle provision, appellees breached this provision, however, an issue of material fact exists as to whether RFI was prejudiced by that breach.
 {¶ 66} Appellants' First Assignment of Error is sustained and this issue is remanded, to the trial court, for the court to apply theFerrando analysis.
 {¶ 67} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.
By: Wise, J., and Farmer, J., concurs separately.