OPINION
{¶ 1} In this appeal, appellants, Shalee Bontrager and Ronnie Bachna, appeal from the decision of the Geauga County Court of Common Pleas, granting summary judgment in favor of appellees, St. Paul Fire Marine Insurance Company, Cincinnati Equitable Insurance Company, Cincinnati Insurance Company, and Grange Insurance Company.[1]
 {¶ 2} The record discloses the following facts. On January 29, 1996, a vehicle owned and operated by Bonnie Bachna Gaumer ("Bonnie") was involved in a collision with a car negligently operated by Joshua Minix ("tortfeasor"). Kevin Pulford ("Kevin"), an infant passenger in Bonnie's vehicle, was being held by his mother, Andrea Bontrager, in the front passenger seat. Unfortunately, due to the collision, Kevin sustained serious injuries and died. Appellants, Shalee Bontrager ("Shalee") and Ronnie Bachna ("Ronnie"), were also passengers in Bonnie's vehicle and both suffered multiple injuries as a result of the accident.
 {¶ 3} At the time of the accident, Shalee resided with her grandparents and legal guardians, Wayne Bontrager ("Wayne) and Joyce Bontrager ("Joyce"). Wayne was an employee of Lincoln Electric. Lincoln Electric had an automobile liability insurance policy with appellee, St. Paul Fire and Marine Insurance Company ("St. Paul"). This policy expressly provided coverage for uninsured/underinsured motorist ("UIM") claims. Additionally, Wayne personally received liability insurance via an automobile liability policy with Cincinnati Equitable Insurance Company ("Cincinnati Equitable"). This policy also expressly provided for UIM coverage.
 {¶ 4} When the accident occurred, Ronnie's father, Ronald Bachna ("Ronald"), personally held an automobile liability policy with appellee, Grange Insurance Company ("Grange"). This policy provided UIM coverage for Ronald and his family members. Furthermore, at the time of the accident, Ronald was employed by Ohio Associated Enterprises, Inc., which had in effect insurance policies with appellee, Cincinnati Insurance Company ("Cincinnati Insurance"). One policy was a primary policy of insurance that included automobile liability coverage and UIM coverage. The other policy was a commercial umbrella policy.
 {¶ 5} On the date of the accident, the tortfeasor had automobile liability insurance coverage with Westfield Insurance Company ("Westfield"). This policy had liability limits of $100,000/$300,000.
 {¶ 6} On November 3, 1997, William Hoffstetter, the administrator of Kevin's estate, executed a settlement and release by which Westfield paid $100,000 to Kevin's estate. By the terms of the release, tortfeasor and his next of kin were released from any future claims of the administrator and from any claims of the estate. From the settlement agreement, Shalee received $8,822.21 as Kevin's half-sister and Ronnie received $8,822.21 as Kevin's uncle.
 {¶ 7} Ronnie then settled all personal claims against tortfeasor by executing a settlement and release on September 30, 1999. As a result of this settlement and release, Ronnie received $25,287.50 from Westfield. Likewise, on January 11, 2000, Shalee entered into a settlement and release with tortfeasor and received $9,800 from Westfield.
 {¶ 8} On or about June 25, 2001, Shalee and Ronnie filed a complaint in the Geauga County Court of Common Pleas, seeking UIM claims pursuant to insurance policies with St. Paul, Cincinnati Equitable, Cincinnati Insurance, Grange, and State Farm. All appellees answered and moved for summary judgment arguing that appellants' were not entitled to UIM coverage under the policies.
 {¶ 9} On March 27, 2002, the trial court granted summary judgment in favor of appellees, and found that these were final appealable orders with no just reason for delay. In so doing, the trial court adopted appellees' summary judgment arguments and found appellants were not entitled to UIM coverage under the policies.
 {¶ 10} From these judgments, appellants filed a notice of appeal with this court, advancing three assignments of error for our consideration:
 {¶ 11} "[1] The trial court erred in granting summary judgment in favor of appellees St. Paul Fire Marine Insurance Company, Cincinnati Equitable Insurance Company and Grange Insurance Company on the grounds that appellants failed to provide sufficient notice of the underlying claim and of the tortfeasor being discharged, thereby defeating the appellees' right of subrogation.
 {¶ 12} "[2] The trial court erred in granting summary judgment in favor of appellees St. Paul Fire Marine Insurance Company and Cincinnati Insurance Company on the grounds that appellants were not insured under said policies.
 {¶ 13} "[3] The trial court erred in granting appellee, State Farm Fire Casualty Company's motion for summary judgment by finding that the State Farm homeowner's insurance policy did not provide uninsured and or underinsured motorist coverage."
 {¶ 14} Before addressing the merits of appellants' assignments of error, we will first set forth the appropriate standard of review.
 {¶ 15} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Under Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in their favor. Civ.R. 56; Mootispawv. Eckstein (1996), 76 Ohio St.3d 383, 385; Leibreich v. A.J.Refrigeration, Inc. (1993), 67 Ohio St.3d 383, 385.
 {¶ 16} Material facts are defined as facts that might affect the outcome of the suit under the governing law of the case. Turner v.Turner (1993), 67 Ohio St.3d 337, 340, citing Anderson v. Liberty Lobby,Inc. (1986), 477 U.S. 242, 248. To ascertain what constitutes a genuine issue, the court must resolve whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
 {¶ 17} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280. Accordingly the moving party must point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving parties claim. Id. If the moving party satisfies its initial burden under Civ.R. 56(C), the nonmoving party has the burden to respond as provided in the rule, so as to demonstrate that there is no genuine issue of a material fact. Id. However, if the nonmoving party fails to meet this burden, then the trial court may enter summary judgment against that party. Id.
 {¶ 18} In their first assignment of error, Shalee and Ronnie argue that the trial court erred in granting summary judgment in favor of appellees, St. Paul, Cincinnati Equitable, and Grange. Appellants contend that they were insured under the respective insurance policies of these companies at the time of the accident, and that any delay in notification of the accident did not prejudice appellees.
 {¶ 19} The following facts are relevant to Shalee's portion of her assignment of error against St. Paul. As stated previously, when the accident occurred, Shalee resided with her grandparent's and legal guardians, Wayne and Joyce. Wayne was an employee of Lincoln Electric. Lincoln Electric had an automobile liability insurance policy with St. Paul.
 {¶ 20} The St. Paul UIM policy provision states, "[w]e'll pay compensatory damages you and other persons protected under this agreement are legally entitled to collect from the owner or driver of an unisured or underinsured vehicle if the damages result from an accident that causes bodily injury to a protected person."
 {¶ 21} Under the heading "Who is Protected Under this Agreement" the policy provides:
 {¶ 22} "You are protected. Also, if you are named in the introduction as an individual, you and your family members are protected persons."
 {¶ 23} The introduction section of the policy explains that the words you, your, and yours means the employer corporation, Lincoln Electric.
 {¶ 24} In its judgment entry, the trial court granted St. Paul's motion for summary judgment on the basis that Shalee was not covered under St. Paul's UIM coverage because the policy: (1) provided coverage for individuals, (2) was clear and unambiguous, and (3) comports with the requirements of law. Moreover, the trial court found Shalee had breached the policy's notice provisions by failing to promptly notify St. Paul of the accident, and by failing to obtain St. Paul's consent prior to her settlement and release of the tortfeasor.
 {¶ 25} On appeal, Shalee relies upon Scott-Pontzer v. LibertyMut. Fire Ins. Co., 85 Ohio St.3d 660, 665, 1999-Ohio-292, as authority for her arguments. In Scott-Pontzer, the Supreme Court of Ohio held that an employee's wife was entitled to UIM coverage pursuant to his employer's automobile insurance policy with an outside insurance agency. The Scott-Pontzer insurance policy stated, "`throughout this policy the words you and your refer to the named insured shown in the declarations.'" Id. at 663. In Scott-Pontzer, only the employer's name was listed as a named insured in the declaration section. Id.
 {¶ 26} The Scott-Pontzer policy also contained UIM coverage which defined "insured" as follows:
 {¶ 27} "`B. Who is an insured
 {¶ 28} "`1. You.
 {¶ 29} "`2. If you are an individual, any family member.
 {¶ 30} "`3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.'" Id.
 {¶ 31} Upon review, the Court determined that the language of the policy was ambigous and could be interpreted to include UIM coverage for the employer's employees and their family members. Id. at 664. The Court explained that "it would be reasonable to conclude that `you,' while referring to [employer], also includes [its] employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation [employer] as the insured is meaningless unless the coverage extends to some person or persons — including to the corporation's [employer's] employees." Id.
 {¶ 32} The Court then stated, "`language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer.'" Id. at 665. Accordingly, the Court found that at the time of the employee's death he was considered an insured under the employer's insurance policy for the purpose of UIM coverage. Id. Moreover, because the policy extended UIM coverage to any family member, his surviving wife was also entitled to UIM coverage.
 {¶ 33} In the case sub judice, the language of the St. Paul policy is distinguishable from that of the Scott-Pontzer policy language. Here, St. Paul's provision for UIM claims regarding employee's family members is not ambiguous. The provision specifically stated family members are covered only "if you are named in the Introduction as an individual * * *." Unlike Scott-Pontzer, St. Paul's insurance policy extends coverage to employee family members only if the insured is named in the introduction.
 {¶ 34} The ambiguous language of the Scott-Pontzer policy extended beyond the employee and encompassed the policy language regarding the employee's family members. In contrast, the St. Paul policy specifically precludes coverage of any employee's family when such employee is not named in the introduction section of the insurance policy. The clear intent of both St. Paul and Lincoln Electric was to limit UIM coverage of employees' family members to those employees that are named in the introduction. A review of the insurance policy shows that Wayne was not listed in the introduction.
 {¶ 35} As such, the ambiguity which requires us to liberally construe the policy language in favor of Shalee, is not present in the case at bar. The trial court correctly found that the policy language was clear and unambiguous. Consequently, Shalee, as Wayne's family member, was not entitled to UIM coverage under the unambiguous language of St. Paul's policy. This portion of appellants' assignment of error is not well-taken.
 {¶ 36} In the alternative, assuming arguendo that Shalee was an insured under St. Paul's policy, it is clear that she has materially breached St. Paul's consent-to-settle provision. Under the "Exclusions — Claims We Won't Cover" section of St. Paul's UIM policy, the consent-to-settle provision states, "we won't cover any claim that is settled without our consent." The facts demonstrate that St. Paul did not receive notification of the accident until November 14, 2000, almost a year after Shalee settled and released the tortfeasor of any liability.[2]
 {¶ 37} A recent decision by the Supreme Court of Ohio provides us with the controlling law. In Ferrando v. Auto-Owners Mut. Ins. Co.98 Ohio St.3d 186, 2002-Ohio-7217, the issue before the Court was whether a plaintiff seeking UIM coverage forfeited such coverage due to a possible breach of an insurance policy's notice provisions.
 {¶ 38} Before reaching its ultimate conclusion, the Court clarified that there were two separate and distinct types of notice provisions: (1) prompt-notice provisions as to the accident, and (2) notice as to consent-to-settle provisions. Id. at ¶ 70. In discussing both types of notification provisions, the Court moved away from the traditional view that any failure to properly notify resulted in a material breach and estopped the insured from collecting UIM coverage. Instead, the Court moved towards the more modern view that a material breach only occurs when there has been a prejudice to the insurer. See, generally, Ferrando. The Court held that a two-step inquiry is to be applied when evaluating whether a prompt-notice provision or a consent-to-settle provision has been materially breached:
 {¶ 39} "The first step is to determine whether a breach of the provision at issue actually occurred. The second step is, if a breach did occur, was the insurer prejudiced so that UIM coverage must be forfeited?" Id. at ¶ 89.
 {¶ 40} When evaluating consent-to-settle provisions, the first step is to determine whether the provision was breached. Id. at ¶ 91. "If it was not, the inquiry is at an end, and UIM coverage must be provided. Also, if the insurer failed to respond within a reasonable time to a request for consent to the settlement offer, or unjustifiably withheld consent, the release will not preclude recovery under the UIM policy, and the subrogation clause will be disregarded. * * * If the consent-to-settle or other subrogation-related clause was breached, the second step is to determine whether the UIM insurer was prejudiced. If a breach occurred, a presumption of prejudice to the insurer arises, which the insured party bears the burden of presenting evidence to rebut." (Emphasis sic and citations omitted). Id.
 {¶ 41} Here, St. Paul's policy specifically precludes UIM coverage when the insured settles and releases a UIM motorist prior to obtaining St. Paul's consent. Shalee breached this provision of the policy by entering into each settlement and release without St. Paul's consent. Thus, the first step of our analysis is answered in the affirmative.
 {¶ 42} We now move to the second step of the inquiry which requires a determination as to whether Shalee's failure to notify and obtain consent from St. Paul prior to the settlement and release caused the insurer prejudice. As noted previously, once the consent-to-settle provision has been breached, there is a presumption of prejudice in favor of the insurer, and the burden to rebut this presumption is placed upon the insured. Shalee first argues that her delay was harmless because the accident occurred prior to the Supreme Court's decision inScott-Pontzer. Specifically, Shalee contends that her UIM claim would have been immediately denied prior to the Scott-Pontzer decision. Therefore, any delay in notification prior to this decision did not prejudice or fail to preserve the subrogation rights of St. Paul. We disagree.
 {¶ 43} "Awaiting a favorable Supreme Court decision is not a reasonable excuse for appellant's delay and failure to preserve appellee's subrogation rights." Heiney v. The Hartford, 10th Dist. No. 01AP-1100, 2002-Ohio-3718, at ¶ 54. See, also, The Cincinnati Ins.Co. v. Estate of McClain, 2d Dist. No. 2001-CA-96, 2002 Ohio App. LEXIS 1015. As a result, Shalee's argument that her delay was reasonable because Scott-Pontzer had not yet been decided is an unreasonable basis for her failure to notify and obtain consent.
 {¶ 44} Shalee further maintains that St. Paul's subrogation rights were protected due to a provision in her January 11, 2000 settlement and release which preserved the right to pursue claims "under the action styled Wm C. Hoffstetter; et al Plaintiffs vs. Nationwide Mutual Ins. in Geauga County Case No. 98 P. 000802."
 {¶ 45} This argument is misguided. The opportunity to pursue a lawsuit under the above stated action does not protect the specific subrogation rights to which St. Paul is entitled. Absent each settlement and release, St. Paul could have enforced its subrogation rights to pursue legal action against tortfeasor. Such legal action would have possibly allowed St. Paul to seek a claim against tortfeasor that ultimately could have reduced its liability for UIM coverage.
 {¶ 46} Each settlement and release specifically stated that Shalee released tortfeasor from any and all future actions, claims and demands arising from the accident. Consequently, St. Paul was precluded from pursuing any further claims against tortfeasor.
 {¶ 47} Next, Shalee argues that St. Paul's subrogation rights were not prejudiced because there was no dispute as to tortfeasor's liability and tortfeasor was uncollectible. In short, Shalee reasons that her failure to notify and obtain consent prior to the settlement was harmless because any attempt to collect from tortfeasor would have been unsuccessful.
 {¶ 48} Shalee has offered no evidence of the type listed in Civ.R. 56(C) that proves these allegations to be true. To the contrary, it is quite evident that Shalee's failure to notify and obtain consent prior to each settlement and release has forfeited St. Paul's opportunity to investigate the accident, determine and verify the extent of any injuries sustained and, more importantly, further pursue a claim against tortfeasor. Based upon the foregoing, it is evident that St. Paul has been prejudiced by Shalee's failure to notify and obtain consent. As a result, St. Paul's consent-to-settle provision has been materially breached. The second step of the Ferrando two-step inquiry has been answered in the affirmative. This portion of appellants' assignment of error is not well-taken.
 {¶ 49} We now turn our attention to the relevant facts regarding Shalee's assignment of error against Cincinnati Equitable. Wayne personally received UIM coverage via an insurance policy with Cincinnati Equitable. Under the policy, Shalee, as a family member, was entitled to UIM coverage.
 {¶ 50} Under its "Exclusions" section for UIM claims, Cincinnati Equitable required that the insured give prompt written notice of any tentative settlement agreement and obtain its consent prior to any settlement agreement. In its motion for summary judgment, Cincinnati Equitable argued that notification of the accident was not given until three years after its occurrence, and that such notification was subsequent to each settlement and release.[3]
 {¶ 51} In its judgment entry, the trial court granted Cincinnati Equitable's motion for summary judgment finding that appellant's failure to give prompt notice of the accident and failure to obtain consent prior to the settlement and release effectively breached the policy's notice provisions.
 {¶ 52} Again we will apply the Ferrando two-step inquiry to determine whether Cincinnati Equitable's consent-to-settle provision has been materially breached. As an initial matter, we note that Shalee incorporates the same arguments used in her assignment of error regarding St. Paul's consent-to-settle provision against Cincinnati Equitable.
 {¶ 53} In the instant case, Cincinnati Equitable's policy makes clear that notification and consent is required prior to any settlement agreement as to protect its subrogation rights. Moreover, the evidence establishes that Cincinnati did not receive notice of the accident until after Shalee entered into each settlement and release with tortfeasor. This being the case, Cincinnati Equitable's consent-to-settle provisions have been breached, and the first step of the two-step inquiry has been answered in the affirmative.
 {¶ 54} We now move to the second step of the inquiry. Shalee again argues that her delay was harmless because the accident occurred prior to the Supreme Court of Ohio's decision in Wolfe v. Wolfe (2000),88 Ohio St.3d 246. As stated previously, "[a]waiting a favorable Supreme Court decision is not a reasonable excuse for appellant's delay and failure to preserve appellee's subrogation rights." Heiney at ¶ 54. See, also, Estate of McClain. As a result, awaiting a favorable decision of the Supreme Court of Ohio is an unreasonable basis for Shalee's failure to notify and obtain Cincinnati Equitable's consent to settle.
 {¶ 55} Shalee also maintains that Cincinnati Equitable's subrogation rights were protected due to the provision in her January 11, 2000 settlement and release which reserved the right to pursue claims "under the action styled Wm C. Hoffstetter; et al Plaintiffs vs. Nationwide Mutual Ins. in Geauga County Case No. 98 P. 000802." Once again, we note that the opportunity to seek a lawsuit pursuant to the above stated action does not protect the specific subrogation rights which Cincinnati Equitable is entitled to and is attempting to protect. Without Shalee's release of tortfeasor, Cincinnati Equitable could have enforced its subrogation rights to pursue legal action against tortfeasor. Such legal action might have allowed Cincinnati Equitable to reduce its liability for UIM coverage.
 {¶ 56} Finally, Shalee reiterates that Cincinnati Equitable's subrogation rights were not prejudiced because there was no dispute as to tortfeasor's liability and tortfeasor was uncollectible.
 {¶ 57} Again, Shalee offers no evidence of the type listed in Civ.R. 56(C) that prove these allegations. Shalee's failure to notify and obtain consent prior to each settlement and release forfeited Cincinnati Equitable's opportunity to investigate the accident and determine the extent of any injuries sustained. It also precluded Cincinnati Equitable from pursuing a claim against tortfeasor. It is clear that Cincinnati Equitable has been prejudiced by Shalee's failure to notify and obtain consent. As a result, Cincinnati Equitable's consent-to-settle provision has been materially breached. The second step of the Ferrando two-step inquiry has been answered in the affirmative. This portion of appellants' assignment of error is not well taken.
 {¶ 58} We will now examine the relevant facts regarding Ronnie's portion of the first assignment of error. Ronald Bachna, Ronnie's father, was a named insured under a personal Grange automobile liability policy which included UIM coverage for his family members. After the accident, Ronnie executed a settlement and release of the tortfeasor as a part of Kevin's estate on November 3, 1997 and a separate settlement and release for all personal claims on September 30, 1999. Grange did not receive notice of the accident or either settlement and release until July 2, 2001. As part of its policy provisions, Grange required an insured seeking UIM coverage to obtain its consent prior to any settlement agreement.
 {¶ 59} In its judgment entry, the trial court granted Grange's motion for summary judgment. The trial court found that the delay in notification of the accident and failure to obtain consent prior to each settlement and release breached Grange's policy provisions and destroyed its subrogation rights.
 {¶ 60} In the appellate brief, Ronnie incorporates the same arguments made against both St. Paul and Cincinnati Equitable. We will again apply the Ferrando two-step inquiry to determine whether there has been a material breach of Grange's consent-to-settle provision. As stated previously, Ronnie entered into two separate settlement agreements, which released tortfeasor from all future claims. At no time prior to either settlement and release did Ronnie obtain Grange's consent. As a result, Grange's consent-to-settle provision has been breached and the first step of the inquiry has been answered affirmatively.
 {¶ 61} Due to each settlement and release, Grange was precluded from pursuing any legal action against tortfeasor. Furthermore, Ronnie's failure to notify and obtain consent has forfeited Grange's opportunity to promptly investigate the accident and determine the extent of any injuries sustained by Ronnie. Ronnie has offered no evidence that would tend to rebut this prejudice. Thus, Grange has been prejudiced by Ronnie's failure to obtain consent prior to executing each settlement and release.
 {¶ 62} Both steps of the Ferrando two-step inquiry have been answered affirmatively. Therefore, Ronnie has materially breached Grange's consent-to-settle provision. This portion of appellants' assignment of error is not well-taken.
 {¶ 63} The foregoing analysis has determined that Shalee was not an insured under St. Paul's insurance policy with Lincoln Electric and, in the alternative, materially breached St. Paul's consent-to-settle provision. Also, we have found that both Shalee and Ronnie have materially breached the consent-to-settle provisions of Cincinnati Equitable's policy and Grange's policy. As there are no genuine issues of material fact, appellants' first assignment of error is without merit.
 {¶ 64} In the second assignment of error, appellants, Shalee and Ronnie, contend that the trial court erred in granting summary judgment in favor of appellees, St. Paul and Cincinnati Insurance.
 {¶ 65} As part of the first assignment of error, we found that Shalee was not an insured under the St. Paul automobile liability policy. Consequently, her argument regarding the St. Paul policy in the second assignment of error is moot.
 {¶ 66} The following facts are relevant to Ronnie's portion of the second assignment of error. At the time of the accident, Ronald Bachna's employer, Ohio Associated Enterprises, Inc., received coverage through a commercial umbrella policy and a primary insurance policy that included automobile liability coverage. The automobile liability coverage provision contained UIM coverage. The common policy declarations state:
 {¶ 67} "Named Insured[:] Ohio Associated Enterprises, Inc. Dba Omnitec And Meritec, Gil Marine, Inc., John T. Venaleck"
 {¶ 68} The UIM provision of the policy further provides:
 {¶ 69} "B. Who is an Insured
 {¶ 70} "1. You
 {¶ 71} "2. If you are an individual, any "family member."
 {¶ 72} Ronnie once more relies upon Scott-Pontzer as precedent that he is an insured under the Cincinnati Insurance policy and, thus, is entitled to UIM coverage.
 {¶ 73} Cincinnati Insurance counters by arguing that the policy language is not ambiguous because a specific individual, John T. Venaleck, is named in the declaration section of the general policy.
 {¶ 74} This court recently rejected this argument when we held that listing specific individuals in an endorsement did not eliminate the ambiguity found in an insurance policy's definition of who was an insured. The Cincinnati Ins. Co. v. Lang, 11th Dist. No. 2002-L-063,2003-Ohio-3267, at ¶ 19. "While the fact that specific individuals are named in the * * * endorsement could be interpreted as meaning only those specific individuals are covered, that is only one possible interpretation of the policy." Reichardt v. Natl. Surety Corp., 12th Dist. Nos. CA2002-02-017 and CA2002-02-018, 2002-Ohio-5143, at ¶ 17. "Therefore, although the endorsements in question name specific individuals and/or classes of individuals, they do not eliminate the ambiguities attendant to including the corporate entity as an insured under the policy. In fact, naming specific individuals or a specific class of individuals only serves to broaden the definition of an insured rather than restrict that definition." Lang at ¶ 19. See, also,Addie v. Linville, 8th Dist. Nos. 80547 and 80916, 2002-Ohio-5333, at ¶ 43.
 {¶ 75} It is evident from our previous holdings that the listing of an individual in addition to a corporate employer will not abrogate the ambiguous nature of the Cincinnati Insurance policy. Accordingly, Ronald, as an employee of Ohio Associated Enterprises, Inc., is an insured under the policy. However, we must next resolve whether Ronnie, as Ronald's son, is entitled to UIM coverage.
 {¶ 76} Under the UIM policy provision a "family member" is defined as:
 {¶ 77} "[A] person related to you by blood, marriage or adoptionwho is a resident of your household, including a ward or foster child." (Emphasis added.)
 {¶ 78} As part of its discovery, Cincinnati Insurance submitted interrogatories with Ronnie. One such interrogatory made the following request:
 {¶ 79} "List Ronnie Bachna's places of residence since his birth, and for each place listed, state the inclusive dates that he lived there, and state the names of any other persons who resided there with him and their relationship to Ronnie Bachna."
 {¶ 80} Ronnie's answer to this interrogatory stated:
 {¶ 81} "December, 1987 — June, 1997; 17053 Hart Road, Montville, Ohio
 {¶ 82} "Bonnie Bachna — mother — until June 1997
 {¶ 83} "Ron A. Bachna — father — until December 1991"
 {¶ 84} Ronnie's answer to Cincinnati Insurance's interrogatory makes clear that Ronnie was not residing with Ronald at the time of the accident. Although not defined in the policy, resident generally "means a dweller, habitant or occupant; one who resides or dwells in a place for a period of more, or less, duration." Blacks Law Dictionary (6 Ed.Abr. 1971) 907. In the appellate brief, Ronnie argues that he resided with both Bonnie and Ronald. However, Ronnie fails to present evidence of the type listed in Civ.R. 56(C) which would demonstrate that he was in fact residing with Ronald at the time of the accident.
 {¶ 85} Because Ronnie was not a resident of Ronald's household at the time of the accident, he is not a "family member" as defined by the Cincinnati Insurance policy. Therefore, Ronnie is not an insured for the purpose of UIM coverage under the policy. This portion of appellants' second assignment of error is without merit.
 {¶ 86} In the alternative, we note that Cincinnati Insurance's UIM provision requires that the insured obtain consent prior to any settlement agreement. As mentioned previously, Ronnie entered into two separate settlements and releases. Each settlement and release was executed without the notification or consent of Cincinnati Insurance. Therefore, the first step of the Ferrando inquiry has been answered affirmatively. Furthermore, due to the settlement and release, Cincinnati Insurance has been prejudiced in that it will be unable to pursue any legal action against tortfeasor, investigate the accident, or determine the extent of Ronnie's injuries. Ronnie fails to present evidence that would tend to rebut this prejudice. Consequently, Cincinnati Insurance's policy provision has been materially breached.
 {¶ 87} Based upon the foregoing analysis, Ronnie was not an insured under the Cincinnati Insurance policy. Even assuming that Ronnie was insured, it is clear that he has materially breached the consent-to-settle provisions of the policy. Accordingly, appellants' second assignment of error is without merit.
 {¶ 88} The sole appellee named in appellants' third assignment of error is State Farm. As mentioned previously, appellants' have filed a notice of voluntary dismissal of State Farm with this court. Thus, appellants' third assignment of error is moot.
 {¶ 89} This court finds that the trial court did not err in granting summary judgment in favor of appellees. The judgment of the trial court is, therefore, affirmed.
Judgment affirmed.
DIANE V. GRENDELL and CYNTHIA WESTCOTT RICE, JJ., concur.
[1] In appellant's notice of appeal, both State Farm Insurance Company ("State Farm") and Westfield Insurance Company ("Westfield") were named appellees. However, on March 19, 2003, appellants filed a notice of voluntary dismissal of both State Farm and Westfield. On March 28, 2003, this court issued a judgment entry granting the dismissal, while retaining the part of appellants' appeal as to the remaining appellees.
[2] Although St. Paul submits an affidavit by Peggy Eichoff claiming that this was its first notification of the accident, the affidavit had not been signed or notarized. However, Shalee does not contest the statements of the affidavit and implies that notification was given subsequent to both settlements and releases.
[3] Although Cincinnati Insurance fails to set forth affirmative evidence establishing the exact date they first received notification, appellants concede that notification did not occur until after each settlement and release was executed.